902 So.2d 1247 (2005)
STATE of Louisiana, Appellee
v.
Roosevelt BAKER, Appellant.
No. 39,696-KA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*1248 Louisiana Appellate Project by Peggy J. Sullivan, Monroe, for Appellant.
William Robert Coenen, Jr., District Attorney, Penny Wise Douciere, Kenneth Douglas Wheeler, Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and DREW, JJ.
DREW, J.
The defendant, Roosevelt Baker, was convicted of aggravated burglary and sentenced to 25 years at hard labor. He now appeals his conviction and sentence. We affirm.

FACTS
Mr. Baker began dating Carol McQueen in 1995, with cohabitation starting in 1996. After living together for a short time, Baker and McQueen moved to a house, rented in McQueen's name, on Scott Street in Rayville. The two lived there with the victim's teenage son for several years. Their relationship was, at best, stormy, with Baker moving in and out of the house in between frequent altercations.
In October 2002, McQueen broke off their relationship for good, asking him to move out. Since Baker refused to leave, McQueen called the Rayville Police, who observed Baker strike McQueen in their presence. It took five officers to subdue and remove Baker from the home. Baker was convicted of trespass, criminal damage *1249 to property, and resisting arrest, all relative to this incident.
For the next six months, Baker engaged in a pattern of continuous stalking of McQueen. Almost daily, Baker would harass her, either by incessant telephone calls or by breaking into McQueen's home, usually by forcing open or breaking down a door. Through the years, McQueen replaced five doors at her home, all broken by Baker. When she could no longer afford to replace the back door, she moved the icebox in front of it in an effort to keep Baker out of her home.
Rayville police officers were called to McQueen's house to remove Baker at least once a week during the six-month period preceding the instant offense. On some occasions, Baker was arrested on misdemeanor charges. On other nights, the police merely told Baker to leave and not return.[1] On November 14, 2002, following another altercation by Baker at McQueen's home, the police tried to get Baker to sign a "Notice of Restriction From Property" form, which would establish in writing that he was barred from the property and that if he entered the premises, he would face a trespassing charge. He refused to sign the document.
McQueen admitted that on two occasions during this six-month period (from November 2002 to April 2003), she invited Baker back to her home twice:
 once, to fix a plumbing problem; and
 second, to jump start her vehicle.
She further testified that she did not invite him back on any other occasion during this turbulent six months, nor was he ever allowed to move back into her home.
On March 29, 2003, Baker again broke into McQueen's home. McQueen, who was at work at the time, realized he was in her home when he called her on a phone inside the home. Again, the police responded and removed Baker from the home. This time, Baker agreed to sign a "Notice of Restriction From Property" form, which contained the following acknowledgment:
I Roosevelt Baker understand that as of the 29th day of March, 2003, I have been barred from [Scott Street] and that to return to such property, I will be arrested for Criminal Trespass.
On the evening of April 18, 2003, McQueen was at home, asleep in her bed. She had taken some medication which made her drowsy. She was awakened by the sound of Baker entering her bedroom. McQueen attempted to dial 911, but was unable to complete the phone call, as Baker straddled her and began hitting her in the face. As he was hitting her, Baker demanded that she admit that she was having an affair with a friend of his.
McQueen suffered these physical injuries:
 multiple breaks and fractures in her face and jaw;
 permanent nerve damage on one side of her face; and
 the loss of several teeth, as the underlying jawbone was broken so badly that it could no longer support the roots of those teeth.
Baker was arrested shortly thereafter and later charged by bill of information with aggravated burglary. After his arrest, and while incarcerated, Baker wrote numerous harassing letters to McQueen and her employer. Prior to trial, the state *1250 filed a notice that it intended to use the following as other crimes evidence at trial:
 Baker's trespasses and altercations at McQueen's home from November 1, 2002, to April 18, 2003;
 his forging some of her checks; and
 his writing numerous letters to her and her employers.
Additionally, the state also gave notice that it intended to offer, upon cross-examination of Baker, evidence of prior convictions, including the:
 1988 conviction for sexual battery;
 1989 conviction for remaining on premises after being forbidden; and
 1993 conviction for possession of cocaine.
The state also filed a motion in limine, seeking to bar Baker from introducing any evidence that McQueen may have been having sexual relations with anyone just prior to the crime. The state also sought to bar Baker from telling the jury about any settlement negotiations or what sentence he might be facing.
Baker was tried by jury. Prior to the taking of evidence, the trial court held a hearing on the state's motions in limine. The trial court ruled that:
 Baker's acts against McQueen, during the six months prior to the present offense, were admissible;
 Baker could not raise issues of any relationships between McQueen and any other men, including the man whose name Baker asked her about as he was beating her on April 18, 2003; and
 Baker's lawyer could not tell the jury the maximum sentence exposure Baker was subject to, but allowed him to tell the jury about the minimum one-year sentence.
At trial, McQueen testified about:
 her unhappy relationship with Baker, leading up to its termination, at her request, in the fall of 2002;
 his continuing stalking of her, including breaking into her home, shattering her windows and doors and otherwise harassing her until April 18, 2003;
 Baker's breaking in and beating her on the night in question; and
 the fact that she denied inviting him into her home on April 18, 2003.
Her son, Cody McQueen, testified that:
 he locked and bolted the front door lock before going to sleep on the evening of April 18, 2003;
 he was awakened by the sounds of Baker's attack;
 he saw Baker leaving through the broken front door;
 his mother suffered horrific injuries that night;
 the police were called; and
 his mother was taken to the emergency room.
He also testified that Baker had previously broken into their home on numerous occasions.
Rayville police officers testified about their continued efforts to stop Baker from going to, and into, McQueen's home.
McQueen's dentist testified about the extent of her serious facial and devastating dental injuries.
Baker first called Theo J. Coenen, III, attorney at law, who testified that:
 he knew Baker, who did yard work for him;
 Baker and McQueen had an on-and-off relationship; and
 sometimes when Baker and McQueen broke up, McQueen would seek out Baker to reconcile.
*1251 Baker's mother and sister testified that between November 2002 and April 18, 2003, Baker and McQueen broke up and reconciled several times. Both testified that during that time period, Baker was living at his mother's house.
Baker testified on his own behalf, stating that:
 throughout their relationship, whenever they would have a fight and she would lock him out, he would push the door in;
 after he served his time for his October 2002 offenses, McQueen picked him up from the detention center;
 they did not get back together, but tried to "play it cool" because she had signed papers with the police barring him from going to her house;
 they would spend three or four nights together, get into a fight, and she would call the police;
 on the night of April 18, 2003, McQueen called and invited him over;[2]
 he caught a ride to her house;
 the front door was open;
 he walked into the house, then into McQueen's bedroom, where the two talked;
 they got into an argument;
 she pushed him and told him to get out of the house;
 he snapped and hit her three or four times;
 he didn't kick in the door on that night, but had done it on other nights;
 he had two prior felony convictions, being sexual battery and possession of cocaine;
 he had also been convicted of remaining on premises after being forbidden;
 he had numerous municipal court convictions relating to offenses against McQueen, including a 2000 conviction for criminal trespassing, a March 2002 conviction for criminal damage to property, and the November 2002 convictions mentioned previously;
 he did not hit McQueen in October 2002 when he was removed from her home;
 he sometimes called her 25 to 30 times a day, but only because he loved her;
 the 20 jailhouse letters mailed to her were to get her to tell the truth; and
 he admitted hitting McQueen on April 18, 2003, but argued her injuries were not that serious.
After the end of the charge conference, Baker withdrew his request to be able to read the range of sentencing exposure to the jury, stating that if he was not able to argue the maximum of 30 years, he did not want to be limited to telling the jury about the one-year minimum.
The jury found Baker guilty as charged. The trial court ordered a PSI. Prior to sentencing, Baker filed a pro se motion for new trial, primarily contesting statements by the state's witnesses. On September 8, 2004, the trial court sentenced Baker to serve 25 years at hard labor.
Baker filed a motion to reconsider sentence, which was denied without a hearing. This appeal followed.
After the appeal was lodged, this court remanded to the trial court to rule on the pro se motion for new trial, if it had not already done so. On December 28, 2004, the trial court issued a written order denying Baker's motion.

DISCUSSION

Proof of an Unauthorized Entry
La. R.S. 14:60 provides, in pertinent part:

*1252 Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
* * *
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.
La. R.S. 14:62 provides:
A. Simple burglary is the unauthorized entering of any dwelling, vehicle, water craft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.
Baker first argues that the state's evidence was not sufficient to support a conviction of aggravated burglary because the evidence does not prove he entered the home without consent. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
Baker is correct that Louisiana law treats unauthorized entry and felonious intent as separate and distinct elements of burglary. See La. R.S. 14:60 and 14:62. The state must prove both elements in order to receive a conviction.[3] An entry with undeclared felonious intent is not unauthorized if it is with the knowing and voluntary consent, express or implied, of the owner or occupant of the premises. State v. Smith, 98-2078 (La.10/29/99), 748 So.2d 1139.
In the present case, McQueen and her son testified that on the terrifying night in question:
 the front door was locked;
 Baker broke through the door;[4] and
 entered their home without any authorization.
The jury chose to believe the victim's version of the events. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255. Whether or not McQueen or her son heard Baker breaking in, or the fact that her son did not hear Baker until he was leaving the house, does not create any internal contradiction or irreconcilable conflict with their *1253 testimony. The jury was able to observe the witnesses, including Baker, and make its own factual conclusion. This court will not reassess the jury's credibility determination that the entry was unauthorized.

Other Crimes Evidence
La. C.E. art. 404(B) provides, in part:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Baker argues that the other crimes evidence of him breaking into the victim's home (for a six-month period immediately prior to this offense) was inadmissible because the state failed to prove the other crimes by clear and convincing evidence at the hearing on the matter. Instead, Baker argues, the state's evidence was vague and not germane to this criminal prosecution.
The state argues that the evidence was adequately proven as to be admissible under La. C.E. art. 404(B), so as to prove motive, intent and the absence of mistake or accident in connection with the events of April 18, 2003. The state has the better argument.
For evidence of other crimes to be admissible, the state must (1) prove with clear and convincing evidence that the other acts or crimes occurred and were committed by the defendant; (2) demonstrate that the other acts satisfy one of the requirements of La. C.E. art. 404 B(1) [motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident]; (3) and show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993); State v. Blackwell, 30,281 (La.App. 2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755.
Evidence of other crimes, wrongs, or acts may be introduced when it relates to conduct that forms an integral part of the act or transaction that is the subject of the present proceedings. La. C.E. art. 404(B)(1); State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074; State v. Coates, 27,287 (La.App. 2d Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365.
In the present case, the state gave proper notice it intended to use the other crimes evidence. At the hearing, the state adduced evidence that for nearly six months prior to the incident, Baker engaged in almost-daily harassment of McQueen. He called her, her employer, and her family 20 to 30 times on some days. He broke into her home on at least a weekly basis, resulting in McQueen having to replace five doors. When she couldn't afford to replace doors, she resorted to blocking her door with the refrigerator. Rayville police officers testified they were called to her home on at least a weekly basis to remove Baker. Their removal of Baker often required force. Baker had on a previous occasion acknowledged in writing that to return would be a crime of trespassing.
The trial court found the state had proved with clear and convincing evidence *1254 that Baker had committed prior acts against McQueen, and that the prior acts established motive, intent, knowledge, identity, absence of mistake or accident, and the probative value of the evidence outweighs its prejudicial effect. A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326; State v. Blackwell, supra.
Although the trial court did not specify which elements of proof the prior acts established, the trial court did not abuse its discretion in allowing the evidence at trial. The evidence showed a clear history of Baker repeatedly breaking into McQueen's home, thereby establishing motive, reflecting Baker's obsession with McQueen.
The other crimes evidence established guilty knowledge and an absence of mistake or accident in that, even after he was repeatedly removed from McQueen's home by the police, and warned that if he returned he would be arrested, he still did not stay away.

Excessiveness of Sentence
La. R.S. 14:60 provides, in pertinent part:
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years.
Baker argues the 25-year sentence is excessive, being only five years less than the maximum sentence of 30 years.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are Baker's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
Second, a sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
Our learned brother judge below went to great lengths to fully comply with the requirements of La. C. Cr. P. art. 894.1, as he thoroughly examined Baker's personal history, criminal record, and the seriousness of this cruel and heinous crime, all prior to sentencing Baker.
In open court, the trial court reviewed the PSI, the victim's impact statement, and letters from various family members, friends, and co-workers of the victim. The court thoroughly went over Baker's criminal *1255 history, noting that Baker was a third felony offender. The court meticulously summarized Baker's personal and family history.
The trial court allowed Baker to make a long, rambling statement about the victim's injuries being faked and evidence being covered up by Baker's counsel and the trial court.
The trial court specifically found there would be an undue risk that Baker would commit another crime, Baker was in need of correctional treatment, and a lesser sentence would deprecate the seriousness of the crime. The trial court further stated that in his 34 years in the legal profession, 13 as a lawyer and 21 as a judge, he had never seen a more serious incident of a man beating a woman. Throughout the sentencing, Baker was combative and was constantly interrupting the trial court.
Baker is a third felony offender, with a 1989 conviction for sexual battery, reduced from forcible rape, and a 1993 conviction for possession of cocaine, reduced from a distribution charge. The PSI shows a history of continued violence against persons, as well as disregard of the property rights of others. The beating of McQueen was an abomination; many of her injuries are permanent. In light of Baker's criminal history, his personal history, and the seriousness of the injuries caused,[5] it cannot be said that this sentence shocks the sense of justice. Baker's punishment exacted here is well deserved and long overdue.

DECREE
Baker's conviction and sentence are AFFIRMED.
NOTES
[1] From this record, it is not at all clear whether or not the officers strictly complied with La. R.S. 46:2140 and, in particular, La. R.S. 46:2141. Had the officers filed a written report of each incident alleging domestic abuse, a much more specific pattern of this horrific relationship would have been available.
[2] Baker ungallantly testified that this was a "booty call."
[3] The elements of burglary could also be satisfied by an unauthorized entry with the intent to commit a theft of any amount. See La. R.S. 14:62.
[4] The state produced photographs of the broken door.
[5] The photographs of the victim's brutal injuries are gut-wrenching.