974 So.2d 805 (2008)
STATE of Louisiana, Appellee,
v.
James L. CALHOUN, Appellant.
No. 42,896-KA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 2008.
Louisiana Appellate Project by W. Jarred Franklin, for Appellant.
Paul J. Carmouche, District Attorney, Suzanne M. Owen, John Ford McWilliams, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, GASKINS and MOORE, JJ.
MOORE, J.
The defendant, James Calhoun, was charged by amended bill of information with aggravated burglary, a violation of La. R.S. 14:60. A 12-person jury convicted Calhoun as charged. Later, he was found to be a second felony offender and sentenced to 27 years at hard labor. Defendant now appeals his convictions and sentence. We affirm.

*807 FACTS
At trial, the victim, Michael Metcalf, testified that on the evening of August 8, 1997, while lying on a sofa watching television in his living room, he heard someone knocking at the back door of his house. When he looked out the window, he (initially) saw two men walking away. He opened the door and asked, "What's up?" The defendant told Metcalf that he had run out of gas and asked if he had a gas can. Metcalf indicated that a third man also walked back to the door. Although he did not know the defendant by name, Metcalf recognized the defendant from the Cedar Grove neighborhood and also recognized the defendant as a man who came to his house two weeks earlier to ask about a person he knew. Metcalf identified the defendant in the courtroom. Metcalf did not know or recognize the other two men.
Metcalf retrieved a gas can from his hallway and attempted to give it to Calhoun, who knocked it down, ran into Metcalf's house, and started beating up Metcalf. The other two men came in behind Metcalf and started beating and kicking Metcalf. One of them grabbed a kitchen knife from a cabinet, while another went into the living room and retrieved Metcalf's .38 revolver from the coffee table. The man with the knife held it "like he was going to stab me in my face." The men, including Calhoun, demanded that Metcalf tell them where his money was as they began to ransack the house searching for money. Fearing for his life, Metcalf told them that he had $45 in a pair of pants located in a back bedroom. Metcalf testified that the men took his money, his pager, and the revolver.
The prosecution introduced photographs of the crime scene pursuant to Metcalf s testimony and the knife used in the crime. Metcalf indicated that on the way out of his house, one of the men snatched the telephone out of the wall so that Metcalf could not call the police. After the men left, he went next door and called the police. He then went to LSU Medical Center where he received four stitches on the side of his head.
Metcalf stated that he had found out the defendant's name from a man in Cedar Grove. He knew a girl named Cookie who was dating Calhoun's brother, and he gave that information to Detective Michael Day. Day later called him to look at a photographic lineup. Metcalf identified Calhoun's picture in the lineup. This same lineup was introduced into evidence at trial. Metcalf said he was certain in identifying Calhoun at the time he had viewed the lineup and was certain that day in court. He denied that he gave Calhoun permission to enter his home, attack him, and steal his money and property.
Officer W.J. McCurry of the Shreveport Police Department testified that on the date of the crime, he responded to the call. Metcalf told him that "some guys had come in on him and beat him up and took some money and, 1 think, an old gun or something he had around there." McCurry looked at photos of the crime scene and verified that they depicted what he had seen.
McCurry acknowledged that his report indicated that Metcalf told him that when he had returned to the door, two other suspects appeared and rushed into Metcalf's house and began beating him. McCurry stated that maybe he didn't clarify, but he understood Metcalf to mean that all three men came in. McCurry also admitted that in his report he stated that one suspect got one of Metcalf's knives and cut the telephone phone line and made an attempt to stab Metcalf, but one of the other suspects told him not to. McCurry then indicated that was what Metcalf told *808 him that night, although Metcalf later denied telling that to the police.
McCurry also testified that Metcalf said that the suspect was Eric's brother and that Eric dated Cookie who lived on Milton Street.
Detective Mike Day interviewed Calhoun at the city jail on. September 3, 1997, and taped the conversation. This conversation and Day's testimony regarding a subsequent telephone call allegedly from Calhoun were the subject of a motion to suppress filed by the defendant and denied by the trial court.
At trial Detective Day testified that he investigated the crime at issue. He went to the crime scene and spoke with Metcalf. Day said that Metcalf told him that he knew a girl named Cookie who was seeing a young man named Eric, and that Metcalf believed one of the individuals involved was Eric's brother. Metcalf gave Day Cookie's telephone number. Day called the number and found out that Eric's last name was Calhoun. From this information, Day developed the defendant as a suspect. Day then created a photographic lineup that included James Calhoun and showed the lineup to Metcalf. He testifled that Metcalf was visibly shaken and immediately pointed to Calhoun's photo, identifying him as the person who robbed him. Eventually, Calhoun turned himself in, wanting to find out about the arrest warrant issued on him. Day testified that the city jail interview took place the night after Calhoun was booked. Calhoun denied any part in the burglary. At trial, the rights card was then introduced and the tape of the interview was played for the jury.
Day further testified that he received a call from a person who identified himself as James Calhoun, and said he was calling from the Caddo Correctional Center ("CCC"), where Calhoun had been transferred. The caller referred to the city jail conversation and said that he wished to make another statement to Day. Day reminded him of his Miranda rights, but the caller wanted to know what kind of deal he could get. Day responded that he was not empowered to make a deal and said that if the caller had any information that might help his case or that would exonerate him, he needed to talk to his attorney. According to Day, the caller said that he had lied to Day at the city jail because he was afraid. The phone conversation terminated shortly afterward in "mid-sentence."
Day also testified that Calhoun had indicated his mother, Rosie Calhoun, could be his alibi and that someone identifying herself as Rosie Calhoun had called Day and told him that her son had nothing to do with the crime. She said that on the day of the crime she had been to CCC to visit her other son, Eric, and had returned after 8:00 p.m. to her residence. She said that the defendant babysat for her up until that time and spent the night there, but they were not in personal contact the whole time because she went to bed; she was not certain what time she had gone to bed.
After the state rested, the defense offered no evidence. Calhoun's attorney indicated that "when we returned back from lunch I was without a client to assist me in the conclusion of this trial." Calhoun had left the courtroom and never returned. His counsel moved for a mistrial, but the court denied the motion. After closing arguments, the jury returned a guilty verdict.
Calhoun remained at large for several years before being recaptured. In May 2005, the state filed a bill of information charging Calhoun as a second felony offender. He pled not guilty, and the matter came on for hearing in October 2005. That hearing covered not only the habitual *809 offender matter, but also a motion for post-verdict judgment of acquittal and a motion for new trial. The court addressed the two motions first, denying both, and then turned to the habitual offender matter.
The state introduced a certified copy of a bill of information charging Calhoun with simple burglary in 1990 and certified court minutes showing that Calhoun was informed of his Boykin rights and pled guilty to unauthorized entry of a place of business, for which he was sentenced to pay a fine of $300. His four-year hard labor sentence was suspended and he was placed on probation. The state also introduced evidence of the instant offense and used a fingerprint expert to show that the fingerprints on the first bill of information were Calhoun's.
Calhoun's counsel sought a continuance and, in the alternative, sought to quash the multiple offender proceedings because the state could not furnish a Boykin transcript for the first felony conviction. The state indicated that it had been trying for several years to obtain a transcript, but understood that it was not available and would never be available. The court denied the continuance at the beginning of the hearing, and after hearing argument following the presentation of evidence, the court denied the motion to quash as well.
Calhoun was sentenced on October 10, 2005. The court noted that as a second felony offender, Calhoun's sentencing range was 15-60 years and that Calhoun was not eligible for probation. The court referenced the provisions of Article 894.1, particularly (A)(2) concerning the need for correctional treatment that can be provided most effectively by commitment to an institution, and (A)(3) concerning a lesser sentence deprecating the seriousness of the defendant's crime. With respect to aggravating factors, the court noted threats of violence, the use of dangerous weapons, the commitment of the crime in concert with others, the fact that the defendant had absconded and remained at large for over six years, and the fact that the defendant never disclosed the identities of the other two men who participated in the crime. As for mitigating factors, the court noted that the defendant did not have actual possession of either the gun or the knife, and that the defendant "may have even persuaded the person with the knife to put down the knife. . . ." The court then sentenced Calhoun to 27 years at hard labor with credit for time served.
The record reflects that the trial court held two hearings on a motion to reconsider sentence. At the first, held on November 23, 2005, the court indicated that it might reduce the sentence if there was a showing that Calhoun had taken any affirmative actions to prevent or attempt to prevent the other two individuals from injuring the victim. The matter then was continued to be reset. At the second hearing on March 28, 2007, the court acknowledged that there had been several postconviction pleadings from Calhoun and asked if there was any further evidence. Both the state and the defense stated they had nothing further. The court then denied the motion to reconsider sentence. This appeal followed.

DISCUSSION
By his first assignment, defendant alleges that there was insufficient evidence for a jury to find him guilty of the offense of aggravated burglary beyond a reasonable doubt. He argues that the state failed to prove beyond a reasonable doubt that he was the same person who entered Metcalf's residence and took the money and items without Metcalf's permission; alternatively, he contends that the state failed to prove that he armed himself or that he *810 committed a battery on Metcalf. The grounds for this misidentification argument is that Metcalf's photo-line-up identification of Calhoun was tainted by the fact that someone else identified Calhoun to Metcalf as the person who robbed him. Additionally, the defendant implies that Metcalf was perhaps motivated by jealousy to identify Calhoun as the robber because Calhoun's brother was involved with a girl named Cookie, with whom, he implies, Metcalf had a romantic interest.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 .S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2 Cir. 8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24. Thus, they are parties to the crimes. La. R.S. 14:23(1). Furthermore, there is no requirement that an indictment explicitly name the accused as "principal." That the accused is indicted for the offense itself, and not charged as an accessory after the fact, irrefutably evidences that he is charged as a principal. State v. Peterson, 290 So.2d 307 (La.1974); State v. Haley, 38,258 (La.App. 2 Cir. 4/22/04), 873 So.2d 747, writ denied, State ex rel. Haley v. State, 2004-2606 (La.6/24/05), 904 So.2d 728.
Aggravated burglary is defined by La. R.S. 14:60:
Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender:
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
In order to prove the crime of aggravated burglary, the state must prove *811 beyond a reasonable doubt that the defendant made an unauthorized entry of a structure with the specific intent to commit a theft or a felony. State v. Lockhart, 438 So.2d 1089 (La.1983). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. State v. Davies, 35,783 (La. App.2.Cir.4/05/02), 813 So.2d 1262, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 389. The intent to commit a theft or felony must exist at the moment of entry. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922. Felonious intent and unauthorized entry are separate elements of the crime. State v. Lockhart, supra; State v. Baker, 39,696 (La.App. 2 Cir. 5/11/05), 902 So.2d 1247, writ denied, 2005-2055 (La.4/28/06), 927 So.2d 281.
The evidence adduced in this case is sufficient to support the defendant's conviction under the Jackson v. Virginia standard. First, Metcalf identified the defendant as the perpetrator by his physical appearance, both in a photo line-up and at trial. The fact that Metcalf did not know the defendant's name at the time of the crime does not render the identification invalid. Nor do we find that the victim's friendship with Cookie, whose boyfriend was the defendant's brother, Eric, made the victim's identification of the defendant suspect.
Defendant also complains that even if he was present, the state did not show that he had a weapon or the intent to commit a felony. Although the defendant was not armed when he entered the victim's home, one of the other men armed himself after entering the victim's house with a kitchen knife. Additionally, the other perpetrator armed himself with the victim's gun. Either of these acts can be imputed to the defendant as a principal to the crime. La. R.S. 14:24. Moreover, the victim testified that the defendant attacked and battered him. Hence no weapon was necessary to meet the elements of the crime of aggravated burglary. The jury obviously found the victim's testimony to be credible.
Viewing the evidence most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of aggravated burglary were proven beyond a reasonable doubt. The testimony of the victim shows that the defendant used the "out of gas" story to lull the victim into lowering his guard. Defendant and the other men forced their way into the victim's home. Once inside, he and the others immediately began beating the victim, ransacking the home, and demanding to know where the money was hidden. These facts evidence both unauthorized entry and the specific intent to commit a theft therein. After battering the victim and holding him at knifepoint, the defendant and the other two men stole the victim's money, cell phone and a gun. Calhoun participated in battering the victim while entering the house and after he entered. Furthermore, Calhoun was a principal to the crime defined by the element of use of a dangerous weapon, since one of the other men armed himself with a dangerous weapon (a knife), while both of the other men concerned in the commission of the crime committed a battery on Metcalf. Accordingly, any rational jury could have concluded that all of the elements of the crime of aggravated burglary were proven beyond a reasonable doubt.
This assignment of error is meritless.
By his second assignment of error, the defendant contends that the trial court erred in allowing evidence of an alleged confession by the defendant when there was no evidence that the person making the confession was the defendant. Specifically, *812 the defendant complains that the trial court should not have allowed Detective Day to testify regarding a telephone call Detective Day said he received from the defendant.
Detective Day testified that on September 5th, two days after he interviewed Calhoun at the, city jail, he received a telephone call from the CCC. The caller identified himself as Calhoun. During the short conversation, the caller referred to his previous interview with Day at the city jail, stated that he had lied and wanted to make a new statement. Day stated that he reminded the caller of his rights under Miranda, and he said he told him he would rather do the interview face to face. The caller was insistent, however, in knowing what kind of deal he could get. Day said he told the caller, whom he believes was Calhoun, that he should talk to his attorney. Shortly afterwards, the conversation ended.
The key issue in this assignment regarding Detective Day's testimony is whether Calhoun, in fact, was the person who telephoned Detective Day. Calhoun asserts that it was unfair to allow a confession to be admitted that was presumably made through the free and voluntary waiver of the Miranda rights when there was no evidence that the defendant was the person making the confession. Defendant contends that since the caller could not be positively identified, it simply cannot be said that the statement that was introduced was freely and voluntarily made by the defendant.
This court reviews the district court's ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State ex rel. Thibodeaux v. State, 2001-2510 (La.03/08/02), 811 So.2d 875, State Jones, 36,553 (La.App.13 2 Cir. 01/29/03), 840 So.2d 7, writ denied, 03-0956 (La.10/03/03), 855 So.2d 309.
We find no error in the trial court's decision to admit Detective Day's testimony regarding the telephone call allegedly from Calhoun from the Caddo Correctional Center. The issue here does not concern voluntariness of the purported confession, but the identity of the caller. Contrary to the defendant's argument that there was no evidence that Calhoun was the caller, the caller identified himself to Detective Day as Calhoun, and exhibited a knowledge of facts that only Calhoun would likely have known.
Nevertheless, Day's testimony regarding the telephone call is what it is: simply testimony of a telephone call in which the caller identified himself as the defendant, wherein he admitted that he had previously lied regarding his knowledge of the burglary, and he wanted to know if he could make a deal. We see no problem with admissibility, and the jury was given the opportunity to decide how much weight to give to Day's testimony.
Accordingly, this assignment is without merit.
By his third assignment of error, the defendant complains that his adjudication as a second felony offender was improper because the evidence was insufficient to prove the prior conviction. The defendant argues that a minute entry submitted by the state to show that the defendant was properly advised of his Boykin rights was defective. He points out that the minutes do not list the three rights and that no other evidence of the Boykin colloquy existed. Thus, the defendant asserts that the state failed to meet its burden of proof with respect to the second felony offender bill of information. Alternatively, the defendant argues that if the state met its initial burden, then the *813 defendant would be left with an impossible task under the burden-shifting framework of State v. Shelton, 621 So.2d 769 (La. 1993). The defendant asserts that without a Boykin transcript, he is unable to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.
In State v. O'Neal, 34,814 (La.App. 2 Cir. 10/12/01), 795 So.2d 1292, we discussed a similar factual situation and explained the applicable law:
In State v. Shelton, 621 So.2d 769 (La. 1993), our supreme court held:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
State v. Shelton, supra at 780.
In the instant case, the defendant's motion to quash the second felony habitual offender bill of information simply alleges that the state failed to provide a Boykin transcript for the defendant's alleged plea to unauthorized entry of a place of business. The motion never alleges, nor has defendant ever offered any evidence to indicate, that the trial court did not advise defendant properly of his Boykin rights or that the defendant did not waive them.
The court minutes introduced by the state show that the defendant was present for the guilty plea hearing with counsel. We conclude that the state, through the use of the minute entry, met its initial burden of proof under Shelton. Once the state has met its burden of proof, the burden shifted to Calhoun to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity. However, the defendant did not introduce any evidence to show an infringement or irregularity in the taking of the plea, and did not even allege such. Instead, he only points out that the Boykin transcript is unavailable. There is no indication that the state was responsible in any way for the missing transcript, and the absence of a transcript does not prevent testimony as to what did or did not occur at the time the plea was taken. Accordingly, we find that the state met its burden of proof in the multiple offender bill. This assignment of error lacks merit.
By his fourth assignment, the defendant contends that the sentence imposed is excessive for this offense and this offender. The defendant complains that while the judge listed several aggravating factors, the judge failed to give adequate weight to the mitigating factors. He contends that he was not the one making *814 threats and that he did not arm himself, and actually told one of the other intruders to put the knife down. He asserts that he "was not a violent person deserving such a harsh sentence." He also states that his conviction was in 1999, that he was not sentenced until 2005, and there was no evidence of any criminal activity during that span of time.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2 Cir. 1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2 Cir. 04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2 Cir. 3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
Contrary to defendant's argument, the trial court referenced Article 894.1 and cited both aggravating and mitigating circumstances, the latter circumstances being the court's recognition that the defendant did not have a weapon and possibly persuaded the person with the knife to put the knife down. Defendant complains that the mitigating factors were not given enough weight. Additionally, he points out that while the conviction for this crime occurred in 1999, he was sentenced in 2005, and there was not evidence of any crimes committed during the interim.
This defendant received less than half the maximum sentence despite the fact that dangerous weapons were used in the commission of the offense and that there was a fight in which Metcalf received injuries. The trial court also correctly noted that the defendant had absconded and had never revealed the identity of the other men involved. Furthermore, despite defendant's argument to the contrary, the *815 defendant was a violent person in committing this crime. Metcalf testified that all three men beat him. Moreover, the trial court took into consideration that the defendant did not arm himself with the knife or gun and that he may have told one of the other men to put the knife down. This sentence in no way shocks the sense of justice.
As for correction of the sentence, the trial court's failure to state that this sentence shall be served without benefits will be automatically corrected by operation of La. R.S. 15:301.1, State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.