MOORE, J.
 

 hThe defendant, Lloyd Bobo, Jr., was convicted of two counts of possession with intent to distribute a Schedule I controlled dangerous substance (“CDS”), namely, marijuana and ecstasy, and one count of possession with intent to distribute a Schedule II CDS, namely, cocaine. On March 19, 2009, the defendant was adjudicated a third-felony offender and sentenced to serve 25 years’ imprisonment at hard labor for each count of possession with intent to distribute the Schedule I narcotics and 30 years’ imprisonment at hard labor for possession with intent to distribute cocaine. All sentences were ordered to run consecutive to each other for a total sentence of 80 years’ imprisonment at hard labor. The defendant now appeals. For the following reasons, we affirm the defendant’s convictions but remand for resentencing.
 

 FACTS
 

 On March 13, 2008, Narcotics Agent Manuel Rosado and Officer Jeremy Edwards, both of the Shreveport Police Department, stopped the defendant for a traffic violation as he was driving a rented, white Impala through the Cedar Grove area of Shreveport. Agent Rosado testified that the defendant failed to come to a complete stop at a stop sign. A pat-down of the defendant yielded a “wad” of cash totaling approximately $1,700. Officer Edwards checked and discovered that there was an outstanding warrant for the defendant for driving with a suspended license. They arrested the defendant and transported him to the Shreveport City Jail. Rosado testified that he did an inventory search of the vehicle before releasing it and found a fully loaded .40 Caliber handgun beside the center |2console. Rosado also testified that the defendant was moving around a lot in the back seat of the unit while being transported. Experience told him that the defendant was trying to remove something from his possession. After Bobo was removed from the vehicle, Edwards searched the back seat area and discovered a bag of what appeared to be narcotics on the floorboard where defendant had been seated. The items were tested and confirmed to be marijuana, (powder) cocaine, crack cocaine and ecstasy. Agent Rosado stated that the vehicle was searched prior to placing the defendant in the back seat of the unit, and there were no other passengers in the unit that day.
 

 The state charged the defendant with violating La. R.S. 40:967(A)(1) for possession of cocaine with intent to distribute, and two counts for violation of La. R.S. 40:966(A)(1) for possession of marijuana and ecstasy with intent to distribute, and for violation of La. R.S. 14:95(E) for illegal carrying of a weapon while in possession of controlled dangerous substances. Defendant was tried by jury. After trial, the jury found the defendant not guilty of carrying a firearm while in possession of a controlled dangerous substance. The jury found the defendant guilty of all three charges of possession with intent to distribute cocaine, marijuana and ecstasy.
 

 The state filed a bill of information charging the defendant as a third felony habitual offender. A contradictory hearing was held on March 16, 2009. After the state presented its evidence and the court heard the defendant’s objections, it adjudi
 
 *6
 
 cated the defendant a third felony offender.
 

 |sOn March 19, 2009, after some discussion and uncertainty about whether only one or all the sentences for the instant convictions could be enhanced, the court concluded that it could enhance the sentences of all three instant convictions. The court then denied the defendant’s timely motions for new trial and post verdict judgment of acquittal and imposed the sentences set forth above.
 

 The defendant filed this appeal alleging several assignments of error regarding his conviction and sentence.
 

 DISCUSSION
 

 We begin our review with the defendant’s fifth assignment of error in which he alleges that the trial court erred in denying both his post-trial motions, each of which pertain to the sufficiency of evidence to convict. When several issues are raised on appeal and one or more questions involve the sufficiency of the evidence, the reviewing court should review the sufficiency claims first because the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The standard of appellate review is whether a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App. 2 Cir. 4/02/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 |/This standard is now legislatively embodied in La. C. Cr. P. art. 821. It does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Robertson,
 
 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442.
 

 The
 
 Jackson
 
 standard is applicable- in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Owens,
 
 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610,
 
 writ denied,
 
 1998-2723 (La.2/05/99), 737 So.2d 747.
 

 In this case, all three of the defendant’s convictions are for possession of Schedule I and II controlled dangerous substances with intent to distribute. The crime of possession with intent to distribute a Schedule I or Schedule II substance requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it.
 
 State v. Johnson,
 
 34,902 (La.App. 2 Cir. 9/26/01), 796 So.2d 201;
 
 State v. Marshall,
 
 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881.
 

 |sRegarding the element of possession of a controlled dangerous substance, the state need not prove the defendant was in physical possession of the narcotics found; constructive possession is sufficient to support a conviction. Guilty knowledge is an essential element of the crime of possession of contraband, and
 
 *7
 
 such knowledge can be inferred from the circumstances.
 
 State v. Toups,
 
 01-1875 (La.10/15/02), 833 So.2d 910. A determination of possession sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession includes his knowledge that the drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs.
 
 Id., State v. Gipson,
 
 45,121 (La.App. 2 Cir. 4/14/10), 34 So.3d 1090,
 
 writ denied,
 
 2010-1019 (La.11/24/10), 50 So.3d 827;
 
 State v. Anderson,
 
 36,969 (La.App. 2 Cir. 4/9/03), 842 So.2d 1222.
 

 In this instance, the state presented proof of defendant’s possession of the narcotics by circumstantial evidence. The pat-down search for weapons on the defendant revealed a large “wad” of cash amounting to $1,700. Although the officers did not discover drugs from this pat-down search, they later found a bundle of various narcotics on the back seat floorboard after transporting the defendant to the Shreveport City Jail. Agent Rosado testified that the defendant was moving back and forth in the back seat “as if he was trying to take something out of his person.” Agent Rosado stated Rthat he has seen this many times in his police experience, so when they arrived at the station, he instructed Officer Edwards to check the vehicle for drugs or weapons, whereupon Officer Edwards found the drugs. Agent Rosado further stated that it was standard procedure to check the police units prior to and after each shift, as well as after transporting a person who has been arrested. On that shift, the defendant was the only person arrested. Randall Robilliard, with the North Louisiana Crime Lab, testified that he analyzed the narcotics in this case, which confirmed the drugs were cocaine, MDMA (ecstasy) and marijuana.
 

 We conclude that a rational jury could have concluded, based on the
 
 Jackson
 
 standard, that the defendant was in possession of the drugs and disposed of the drugs in the back seat of the police unit. Accordingly, the evidence was sufficient to prove the possession element of the crime.
 

 When the specific intent to distribute a controlled dangerous substance is based on circumstantial evidence, the state must prove the amount of the substance, and/or the manner in which it was carried was inconsistent with personal use.
 
 State v. Anderson, supra; State v. Johnson, supra.
 
 Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute.
 
 Id.
 
 Factors useful in determining whether the state’s circumstantial evidence is sufficient to prove intent to distribute include (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such toJj_create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant’s actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute.
 
 Id.
 

 Agent Rosado testified, based on his experience, that the large quantity and variations of narcotics coupled with a large sum of money caused him to believe that the defendant was a distributor of drugs rather than an addict. The amount of ecstasy was described as being more than a handful of pills.
 

 
 *8
 
 Additionally, Agent Carl Townley of the Caddo-Shreveport Narcotics Unit testified as an expert in narcotics investigations, packaging, use and sales of narcotics and possession with intent versus simple possession. Townley testified that packaging was a key element in determining whether the substance was intended for sale rather than use, and whether it is packaged in large doses or small doses. Other factors include the type of drug compared to the amount, and the denominations of currency found on the perpetrator. Townley testified that the crack cocaine seized was packaged in quantities for resale, although in different quantities. Townley said that crack cocaine users, as opposed to dealers, never have a lot of cash on them because they use their money to buy crack. Town-ley expressed his opinion that the one gram of powder cocaine was consistent with it being intended for distribution. He said the 90 ecstasy tablets were also consistent with distribution sales. Finally, he stated that approximately 10 grams of marijuana could have been for resale. Based on packaging, the amount of | seach substance, the amount of money in the defendant’s possession and the lack of paraphernalia for using the drugs, such as a crack pipe, Townley expressed his expert opinion that the defendant was a dealer.
 

 Based on this evidence and testimony, the jury must have concluded that the defendant had the specific intent to distribute the drugs of which he was in possession. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. White,
 
 28,095 (La.App. 2 Cir. 5/08/96), 674 So.2d 1018,
 
 writs denied,
 
 96-1459 (La.11/15/96), 682 So.2d 760, 1998-0282 (La.6/26/98), 719 So.2d 1048. In this instance, we conclude that a rational trier of fact could have reasonably concluded that the defendant was guilty beyond a reasonable doubt of possession of these Schedule I and II controlled dangerous substances with the intent to distribute. Accordingly, this assignment is without merit.
 

 Turning now to defendant’s first assignment of error, by this assignment defendant contends that the trial court committed reversible error in finding that he was a third felony offender. Specifically, the defense argues that because the state did not produce a contemporaneous transcript of the defendant’s guilty plea colloquy for the defendant’s second conviction in Caddo Parish for possession with intent to distribute a 13Schedule I CDS, the state failed to meet its burden of proof that the defendant was a third felony offender,
 
 citing State v. Haley,
 
 38,258 (La. App. 2 Cir. 4/22/04), 873 So.2d 747,
 
 writ denied, State ex rel. Haley v. State,
 
 2004-2606 (La.6/24/05), 904 So.2d 728. Additionally, appellate counsel also argues that this alleged error was compounded by defense counsel’s failure to ask for a continuance of the habitual offender hearing to review the transcript.
 

 The record contains the state’s supplementary discovery response filed on March 13, 2009, in which it provided the bills of information for the two previous felony convictions, the fingerprints of the defendant on the bills of information, and certified copies of the court minutes that indicate that the defendant withdrew his previous plea of not guilty and entered a guilty plea after being advised of his rights. The minutes of the first guilty
 
 *9
 
 plea colloquy reflect that the defendant was advised of his right to trial, his right to confront witnesses, to compulsory process, his right to counsel and the right not to incriminate himself. Additionally, the minutes reflect that after questioning, the court determined that the guilty plea was free and voluntary. The minutes of the second guilty plea merely state that the defendant was advised of his constitutional rights per
 
 Boykin v. Alabama,
 
 followed by the parenthetical “(See court reporter’s transcript).” These items were placed into evidence.
 

 At the habitual offender hearing, the state introduced S-l, which was an index card with fingerprints of the defendant taken on the day of the hearing. With the state’s fingerprint expert, Lieutenant Owen McDonnell, | intestifying, these prints were compared to the prints on state’s exhibit S-2, which included the bill of information and prints from the charge in the Twenty-Sixth JDC and the certified court minutes of the proceedings, and S-3, which included the prints on the bill of information from the First JDC for charges relating to Lloyd Bobo, Jr. and the court minutes of the proceedings. Lieutenant McDonnell visually inspected the prints and concluded that the prints on the bills of information matched those taken from the defendant earlier that day.
 

 Defendant’s counsel objected to S-3 on grounds that the court minutes of that exhibit did not specify what rights the defendant was informed of per
 
 Boykin,
 
 in that, the minutes only stated that the defendant was advised of his constitutional rights per
 
 Boykin v. Alabama
 
 followed by the parenthetical “see court reporter’s transcript” rather than specifically listing the rights to which the defendant was advised of prior to pleading guilty. Because of that objection alone, appellate counsel contends that the trial court erred in finding that the state had proven the defendant committed the second felony and now seeks a reversal of the adjudication that he was a third felony habitual offender.
 

 To obtain a multiple offender adjudication against a defendant, the state must prove by competent evidence that (1) there is a prior felony conviction and (2) that the defendant is the same person convicted in the previous proceeding.
 
 State v. Jeffers,
 
 623 So.2d 882 (La.App. 2 Cir.1993). In order to enhance a sentence with a prior guilty plea, the state bears the burden of proving that the guilty plea was constitutionally taken. lT1Before entering a guilty plea, a defendant must be advised of and waive his constitutionally guaranteed right to a jury trial, right to confrontation and privilege against compulsory self-incrimination.
 
 Boykin v. Alabama,
 
 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);
 
 State v. Flanagan,
 
 32,535 (La.App. 2 Cir. 10/29/99), 744 So.2d 718.
 

 In
 
 State v. Shelton,
 
 621 So.2d 769 (La.1993), our supreme court held:
 

 If the defendant denies the allegations of the bill of information,
 
 the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea.
 
 If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his
 
 *10
 
 privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three
 
 Boy-kin
 
 rights.
 
 State v. Shelton, supra
 
 at 780,
 

 (Emphasis supplied).
 

 In
 
 State v. O’Neal,
 
 34,814 (La.App. 2 Cir. 10/12/01), 795 So.2d 1292, a panel from this court was presented with substantially identical facts to those in this case. The defendant argued that the only evidence of his guilty plea in a prior cocaine possession conviction was a minute entry showing he had been advised of his rights under
 
 Boykin v. Alabama, supra.
 
 |1gHe argued that the record does not indicate what statements the clerk considered as the defendant’s
 
 Boykin
 
 rights, and the trial court failed to advise him of the possible penalties for the crime charged. The defendant urged that, standing alone, the minute entry was insufficient in these circumstances, and the plea should not have been used to adjudicate him a third felony offender.
 
 [1]
 

 Defense counsel in
 
 O’Neal
 
 nowhere argued any infringements of the defendant’s rights or any irregularity with the guilty plea. Rather, his sole complaint was simply the lack of specificity in the minutes. Because the state produced certified copies of the bill of information, a certified copy of the minutes, and an expert that identified the fingerprints on those documents to be those of the defendant, we found that the state more than met its initial burden of proof. Since the defendant did not demonstrate any infringements or irregularity in the taking of the guilty plea, the state was not obligated to produce a perfect transcript.
 
 State v. Shelton, supra.
 
 The minutes reflected that the defendant was represented by counsel and convicted of the offense; therefore, the burden shifted to the defendant to prove an irregularity, and this burden was never met. Consequently, we affirmed the finding of the trial court that the defendant was a third felony offender.
 

 | ^Similarly, in
 
 State v. Calhoun,
 
 42,896 (La.App. 2 Cir. 1/16/08), 974 So.2d 805,
 
 writ denied, State ex rel. Calhoun v. State,
 
 2008-0579 (La.11/26/08), 997 So.2d 544, the defendant argued that the evidence was insufficient to adjudicate him a second felony offender. Defendant argued that the minutes introduced by the state to prove that the defendant was properly advised of his
 
 Boykin
 
 rights for a prior conviction, via plea, was defective because the minutes did not list the three rights. This court concluded that the state met its initial burden under
 
 Shelton
 
 because the minutes introduced indicated that the defendant was present for the guilty plea with counsel, and he was advised of his
 
 Boykin
 
 rights. The court noted that the defen
 
 *11
 
 dant only complained that the
 
 Boykin
 
 transcript was not produced. Because the defendant failed to introduce any evidence to show an infringement or irregularity with the guilty plea, he failed to meet his burden of proof.
 
 See also State v. Warfield,
 
 37,616 (La.App. 2 Cir. 10/29/03), 859 So.2d 307,
 
 writ denied, State ex rel. Warfield v. State,
 
 2004-0152 (La.2/4/05), 893 So.2d 87.
 

 In the case
 
 sub judice,
 
 the certified court minutes reflect that the defendant was represented by counsel, Daryl Gold, at the guilty plea hearing for the second felony offense and reflect that the defendant was advised of his constitutional rights “as per
 
 Boykin v. Alabama.”
 
 The record does not show that the defendant denied the two prior convictions, or that he was not the same person who pled guilty to the second felony of possession with intent to distribute a Schedule I CDS. Nor has the defendant alleged any infringement of his rights at the guilty plea hearing, or submitted a written |14response to the information as required by La. R.S. 15:529(D)(l)(b). Counsel’s only complaint lodged at the habitual offender hearing consisted of his complaint that the state failed to produce a complete transcript from that second felony hearing for counsel to examine for defects.
 

 We find that the state met its initial burden of proof regarding the second felony conviction and the defendant alleged no infringement of his rights that would require the state to produce a perfect transcript of the guilty plea colloquy. Based on the reasoning and holdings of
 
 State v. O’Neal, supra,
 
 and
 
 State v. Calhoun, supra,
 
 we conclude that this assignment is without merit.
 

 Defendant also complains in this assignment on appeal that his counsel erred when it failed to ask for a continuance of the hearing to review the transcript of the
 
 Boykin
 
 colloquy which he complains the state failed to produce. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2 Cir. 9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325.
 

 However, appellate defense counsel merely asserts that counsel’s failure to ask for a continuance compounded the alleged error regarding the transcript. Without presenting any evidence that the defendant was actually harmed by counsel not asking for a continuance, which in this case would 1^require a showing that the guilty plea used for the prior felony was defective, or indeed, whether the failure to ask for a continuance constituted an error by counsel, we will not engage in a Sixth Amendment “right to effective counsel” analysis on this apparent non-issue. Suffice it to say that in order to succeed in an ineffective assistance of counsel claim, the defendant must show both that counsel’s performance was deficient and that he was actually prejudiced before relief will be granted.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Merely asserting that it was an error for failing to ask for a continuance without showing that there were valid grounds to ask for a continuance in this context does not suffice.
 

 By his next assignment of error, the defendant complains that the fingerprint evidence introduced into evidence by the state to prove that the defendant in the instant third felony offender proceeding to identify the defendant in the two prior felony convictions was insufficient be
 
 *12
 
 cause the state’s expert, Lieutenant McDonnell, based his opinion on his visual observation and comparison of the fingerprints. The defense complains that McDonnell took no measurements of the prints, nor did he make any overlays. The defendant contends that simple eye examination, without more, should be held to be insufficient as a matter of law.
 

 Our review of the record indicates that Lieutenant McDonnell was accepted as an expert in fingerprint comparison and analysis at the habitual offender hearing, with no objection from the defense. For McDonnell’s review and examination, the state introduced two separate bills of misinformation for the defendant that contained a fingerprint sheet for each bill and certified copies of the minutes for the respective cases. Lieutenant McDonnell compared the fingerprints he took of the defendant on the day of the hearing with the fingerprint sheets introduced into evidence, and he concluded based upon his observation of the prints that the same person gave each set of fingerprints, which he determined to be those of the defendant.
 

 The Louisiana Supreme Court has repeatedly held that La. R.S. 15:529(F) does not require the state to use a specific type of evidence to carry its burden at a habitual offender hearing and that prior convictions may be proved by competent evidence.
 
 State v. Lindsey,
 
 1999-3302 (La.10/17/00), 770 So.2d 339. When proving at a habitual offender hearing that a defendant is the same person convicted in the earlier proffered predicate offenses, the state may accomplish this through different means, including the testimony of witnesses, expert testimony as to the fingerprints of the accused when compared to those in the prison record introduced or by photographs contained in the duly authenticated record.
 
 State v. Winslow,
 
 45,414 (La.App. 2 Cir. 12/15/10), 55 So.3d 910.
 

 We have no reason to believe that a qualified expert in fingerprint identification cannot identify fingerprints by visual observation, nor has the defendant produced any reasons to show that Lieutenant McDonnell could not make such identification. Accordingly, we conclude that the state established by competent evidence that is legally sufficient to support defendant’s adjudication as a third-felony habitual offender.
 
 State v. O’Neal, supra.
 

 This assignment of error is therefore without merit.
 

 In his third assignment of error, the defendant contends that he is entitled to reversal of his conviction because he was prejudiced by the lack of a videotape of his arrest at trial. Specifically, the defense argues that the trial court abused its discretion when it allowed Agent Rosado to testify about defendant’s arrest without the videotape of the defendant’s arrest. Defense further argues that the destruction of the videotape was a spoliation of evidence, and therefore warrants a reversal of defendant’s conviction.
 

 The state argues that the state’s witnesses adequately explained how the tape was mistakenly destroyed; thus, spoliation of evidence is not applicable.
 

 The theory of spoliation of the evidence refers to an intentional destruction of evidence for the purpose of depriving the opposing parties of its use.
 
 Lewis v. Albertson’s, Inc.,
 
 41,234 (La.App. 2 Cir. 6/28/06), 953 So.2d 771. Spoliation creates a presumption that the evidence was destroyed because it would have been detrimental to one’s case.
 
 Lewis v. Albertson’s, Inc., supra.
 
 However, the presumption of spoliation is not applicable when failure to produce the evidence is adequately explained.
 
 Lewis v. Albertson’s, Inc., supra.
 

 
 *13
 
 Our review of the record discloses that the Assistant District Attorney, Jason Brown, requested a copy of the video from the Shreveport Police Department for discovery purposes. The SPD responded with a letter stating that, although a video of the arrest was actually made, the two | ^arresting officers did not mark them to be saved. If the video footage is not designated by the officers to be saved within 65 days, it is destroyed. In this instance, the officers testified that the system was newly installed in their police unit, and they were unaware of the procedure and deadline regarding preservation of the video of the arrest, and thus failed to request that the video be saved.
 

 We conclude that Agent Rosado as well as Officer Edwards adequately explained how the video footage was destroyed, i.e., it was a new system and procedures were not in place to ensure that evidence on a videotape was maintained. Further, the state did not have an opportunity to view the videotape to know whether it was helpful or hurtful to its case. Under these circumstances, we conclude that the concept of spoliation of evidence does not apply.
 

 This assignment of error lacks merit.
 

 Defendant also contends that he is entitled to a reversal of his conviction because he was prejudiced by the “surprise witness” expert testimony of Agent Carl Townley. The state failed to disclose Townley as an expert witness in discovery. The defense argues that the trial court abused its discretion when it allowed Agent Townley to testify over its strenuous objection. The defense further argues that allowing Townley to testify prejudiced the defendant.
 

 A defendant has the right, upon motion, to inspect and copy reports of scientific tests made in connection with the case that are in the possession of the district attorney and intended for use at trial. La. C. Cr. P. art. 719. | ^However, the state has no obligation to disclose information it does not possess.
 
 State v. Powell,
 
 598 So.2d 454 (La.App. 2 Cir.1992),
 
 writ denied,
 
 605 So.2d 1089 (La.1992). The state has a continuing duty to disclose additional evidence which it discovers or decides to use at trial. La. C. Cr. P. art. 729.3. Nondisclosure does not warrant automatic reversal, but where the defendant is lulled into misapprehension of the strength of the state’s case as a result of nondisclosure, the defendant is entitled to reversal.
 
 State v. Wilson,
 
 27,889 (La.App. 2 Cir. 4/8/96), 672 So.2d 448, citing
 
 State v. Strickland,
 
 398 So.2d 1062 (La.1981). The effects of a discovery violation may be remedied by effective cross-examination.
 
 State v. Powell, supra.
 

 The state’s failure to comply with discovery will not automatically command a reversal. The defendant must show prejudice in order for his conviction to be reversed.
 
 State v. Stewart,
 
 45,333 (La. App. 2 Cir. 8/11/10), 46 So.3d 714.
 

 On the morning of trial, the state informed the defense that Agent Townley was expected to testify as to the weight of the narcotics and the defendant’s intent to distribute the narcotics. In its pretrial motions, the defense requested discovery which asked for all experts. Because the state’s response to discovery did not provide the defense with any reports by Townley or even his name, the defense objected. The state argued that they did, in fact, comply with the discovery rules because Townley did not provide a report.
 

 [ 2()After argument by counsel, the court allowed Townley to testify. Townley testified that, in his expert opinion, the quantity coupled with the variety of narcotics (crack cocaine, powder cocaine, ecstasy and marijuana), the presence of a gun and
 
 *14
 
 large sum of cash, the defendant was a distributor of drugs rather than an addict. Defense counsel cross-examined Townley extensively on whether the amount of drugs and the variations of the drugs would indicate that the defendant was an addict of drugs rather than a distributor.
 

 Prior to Townley testifying, Agent Rosa-do testified that, in his experience, he has known only drug dealers to carry large sums of money and the indicated amount of drugs. He further testified that “it was unheard of’ for an addict to have the specified amount of money and drugs on his person. We conclude, therefore, that although the state failed to comply with the discovery rules, such error, if any, was harmless in this case because of substantially similar testimony of Agent Rosado. The defendant was not “lulled into misapprehension of the strength of the state’s case” because of the state’s nondisclosure; therefore, the defendant is not entitled to a reversal.
 
 State v. Strickland, supra; State v. Stewart, supra.
 

 This assignment of error is therefore without merit.
 

 Sentencing
 

 By his sixth and final assignment of error, the defendant contends that he was erroneously sentenced to 80 years imprisonment. The defendant argues that the aggregate sentence of 80 years is excessive, and the court erred in sentencing the defendant without the benefit of parole in violation 121of La. R.S. 15:529.1(G).
 

 First, we will dispose of the second aspect of this assignment regarding parole eligibility. La. R.S. 15:529.1(G), which was added by Acts 1987, No. 774, states that any sentence imposed under the habitual offender statute “shall be at hard labor without benefit of probation or suspension of sentence.” The penalty increase provided by the habitual offender statute is computed by referring to the underlying offense statute. Conditions may be imposed in addition to those provided for in La. R.S. 15:529.1(G), if those additional conditions are provided in the referenced statute. La. R.S. 15:529.1(G) simply limits the judge’s discretion to suspend or probate a sentence imposed upon an habitual offender.
 
 State v. Richard,
 
 550 So.2d 300 (La.App. 2 Cir.1989). The statute does not require the court to state that the defendant is eligible or not eligible for parole since this is determined by referring to the underlying offense.
 

 However, in this case, any discussion of La. R.S. 15:529.1(G) regarding the defendant’s eligibility for parole under the predicate offense is rendered moot by La. R.S. 15:574.4 regarding parole eligibility. Under subsection (A)(1) of this statute, “[a] person convicted of a third or subsequent felony offense shall not be eligible for parole.”
 
 [2]
 
 Accordingly, this aspect of the assignment of error is without merit.
 

 The defendant was sentenced on March 19, 2009. After sentencing, the defendant filed a motion to reconsider sentence in which he alleged that[2pthe sentences were excessive and not in the interests of justice because the defendant had only two prior convictions, neither of which were crimes of violence. A hearing was set for May 5, 2009; however, it was reset for May 26, 2009. The court minutes reflect that the matter was taken up on May 27, 2009, and neither the defendant, nor defense counsel, were present, whereupon the court denied the motion.
 

 
 *15
 
 At sentencing on March 19, 2009, the court denied the defendant’s motions for post verdict judgment of acquittal and motion for new trial. The court immediately proceeded to impose sentences for the three instant convictions without obtaining a waiver from defense counsel of the 24-hour delay in sentencing required by La. C. Cr. P. art. 873, which provides:
 

 If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence.
 
 If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.
 
 If the defendant expressly waives a delay provided for in the article or pleads guilty, sentence may be imposed immediately. (Emphasis supplied).
 

 In recent jurisprudence the failure to wait the mandatory twenty-four hours after the denial of a motion for new trial or a motion in arrest of judgment, before imposition of sentence, has been held to be an error patent but harmless when no prejudice was shown.
 
 State v. White,
 
 404 So.2d 1202 (La.1981);
 
 State v. Moossy,
 
 40,566 (La. App. 2 Cir. 3/10/06), 924 So.2d 485. Even when assigned as error, courts have required a showing of some actual prejudice before remanding for resentencing.
 
 State v. Colvin,
 
 452 So.2d 1214 (La.App. 2 Cir. 1984),
 
 writ denied,
 
 457 So.2d 1199 (La.1984). Because the defendant has not shown that he was prejudiced by the court’s failure to observe the 24-hour delay in sentencing, we must conclude | gathat it was harmless error that does not require that we vacate the sentence.
 

 We now consider the assertion that the sentence imposed by the trial court is excessive. The test imposed by the reviewing court in determining the ex-cessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Dunn,
 
 30,767 (La.App. 2 Cir. 6/24/98), 715 So.2d 641. The articulation of a factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Landos,
 
 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Bradford,
 
 29,519 (La.App. 2 Cir. 4/02/97), 691 So.2d 864;
 
 State v. Hudgins,
 
 519 So.2d 400 (La.App. 2 Cir.),
 
 writ denied,
 
 521 So.2d 1143 (1988).
 

 There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Jones,
 
 33,111 (La. App. 2 Cir. 3/01/00), 754 So.2d 392, 394,
 
 writ denied,
 
 2000-1467 (La.2/02/01), 783 So.2d 385;
 
 State v. Callahan,
 
 29,351 (La. App. 2 Cir. 2/26/97), 690 So.2d 864,
 
 writ denied,
 
 97-0705 (La.9/26/97), 701 So.2d 979. Whether the sentence ^imposed is too severe depends on the circumstances of the ease and the background of the defendant. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993);
 
 State v. Bonanno,
 
 384 So.2d 355 (La.1980). A sentence is considered grossly dispro
 
 *16
 
 portionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Hogan,
 
 480 So.2d 288 (La.1985);
 
 State v. Bradford,
 
 29,519 (La.App. 2 Cir. 4/02/97), 691 So.2d 864.
 

 A trial court has broad discretion to sentence within the statutory limits.
 
 State v. Dunn,
 
 30,767 (La.App. 2 Cir. 6/24/98), 715 So.2d 641;
 
 State v. Guzman,
 
 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive.
 
 State v. Guzman, supra.
 

 In this instance, the sentencing court did not articulate a single factor or consideration under La. C. Cr. P. art. 894.1 when it imposed sentences on the defendant. The court conferred with the prosecutor that as a third felony offender, the sentencing range was “20 to 60 on each count,” to which the district attorney agreed, adding that the sentences could run either concurrently or consecutively. After some discussion by the court regarding whether it could enhance all three sentences for the three instant convictions, the court concluded that “logically” it could.
 
 [3]
 
 Prior to ^imposing sentence, the court simply stated that “I have looked at this.” “I’ve looked at the record of Mr. Bobo.”
 
 [4]
 

 The court then sentenced the defendant to 25 years at hard labor for possession with intent to distribute marijuana, 25 years at hard labor for possession with intent to distribute MDMA or ecstasy, and 30 years at hard labor for possession with intent to distribute cocaine. The court ordered that “each sentence will run consecutive with the other sentence,” without stating any reasons to justify imposing consecutive sentences rather than concurrent sentences even though all three convictions arose out of the same transaction.
 

 When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment “shall be served concuirently unless the court expressly directs that some or all be served consecutively.” La. C. Cr. P. art. 883. It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently.
 
 State v. Robinson,
 
 33,921 (La.App. 2 Cir. 11/01/00), 770 So.2d 868;
 
 State v. Coleman,
 
 32,906 (La.App. 2 Cir. 4/05/00), 756 So.2d 1218,
 
 writ denied,
 
 00-1572 (La.3/23/01), 787 So.2d 1010.
 

 However, the jurisprudence requires that when consecutive sentences are imposed, the court “shall state the factors considered and its reasons for |gr,the consecutive terms.”
 
 State v. Green,
 
 
 *17
 
 614 So.2d 758 (La.App. 2 Cir.1993).
 
 [5]
 
 A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record.
 
 State v. Strother,
 
 606 So.2d 891 (La.App. 2 Cir. 1992),
 
 writ denied,
 
 612 So.2d 55 (La.1993);
 
 State v. Thompson,
 
 543 So.2d 1077 (La. App. 2 Cir.),
 
 writ denied,
 
 551 So.2d 1335 (1989).
 

 In this instance, the court did not give any reasons for the individual sentences imposed, nor did it give reasons for ordering that the three sentences be served consecutively. The combination of these two errors forces a determination of whether remand is required in this case.
 

 Ordinarily, where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State
 
 v. Lanclos, supra.
 
 There was virtually no compliance with La. C. Cr. P. art. 894.1 in this instance, however. Therefore, the question is whether, in light of this fact, the record provides an adequate factual basis for the sentences imposed.
 

 The marijuana and ecstasy convictions have a sentencing range for each of from 5 to 30 years, and for the Schedule II conviction, the penalty range was from 2 to 30 years, with the first two years without the benefit of ^probation, parole or suspension of sentence. However, as a third-felony offender, the enhanced penalties for each conviction is “not less than two-thirds of the longest possible sentence and not more than twice the longest possible sentence.” La. R.S. 15:529.1(A)(2)(b)(3)(a). Therefore, the sentencing range for each conviction was 20 to 60 years.
 

 We conclude, however, that the combination of the court’s failure to articulate even a single factor from the sentencing guidelines under La. C. Cr. P. art 894.1 in tailoring the sentences imposed on this defendant, which might have also justified ordering consecutive sentences, and the court’s failure to give any reasons to justify imposing consecutive rather than concurrent sentences, on this record, compels us to vacate the sentences and remand for resentencing.
 

 We have repeatedly stated in prior opinions that the purpose of requiring the sentencing judge to articulate the particular facts and considerations that he considered in imposing sentence is two-fold. First, it ensures that the sentence is individualized.
 
 State v. Murdock,
 
 416 So.2d 103 (La.1982);
 
 State v. Logwood,
 
 37,178 (La.App. 2 Cir. 5/14/03), 847 So.2d 115. Second, it gives the reviewing court an actual indication of whether the sentencing judge adequately considered the guidelines of La. C. Cr. P. art. 894.1.
 
 State v. Forshee,
 
 395 So.2d 742 (La.1981);
 
 State v. Logwood, supra.
 
 This is particularly helpful in determining whether the sentence imposed is excessive.
 
 *18
 

 State v. Freeman,
 
 474 So.2d 1035 (La.App. 3 Cir.1985).
 

 For these reasons, we vacate the sentences imposed and remand this case to the trial court for resentencing consistent with the statutory andj^jurisprudential requirements discussed in this opinion.
 

 CONCLUSION
 

 For the foregoing reasons, the convictions of the defendant are affirmed. The sentence of the defendant is vacated, and the case is remanded to the trial court for resentencing.
 

 CONVICTIONS AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.
 

 [1]
 

 . The panel in
 
 State v. O’Neal, supra,
 
 held that there was no question that the state proved that the defendant was the same person who pled guilty in the two 1993 felonies. The state produced independent proof of the defendant’s prior convictions, including the original bills of information and certified copies of the minutes in the prior convictions. Expert fingerprint comparison testimony identified the defendant’s fingerprints, taken at the hearing, as the same fingerprints on the two bills of information in the two earlier proceedings. Thus, the sole issue presented was whether the state proved that the 1993 possession of cocaine guilty plea was made with an articulated waiver of the defendant's
 
 Boykin
 
 rights.
 

 [2]
 

 . Subsection (A)(2) provides that, notwithstanding the provisions of subsection (A)(1), a person sentenced to a term of 30 years or more with or without benefit of parole shall be eligible for parole consideration upon serving at least 20 years of imprisonment in actual custody and upon reaching the age of forty-five.
 

 [3]
 

 . The supreme court held in
 
 State v. Shaw,
 
 2006-2467 (La.11/27/07), 969 So.2d 1233, that all sentences for convictions on the same date for a single course of criminal conduct are subject to enhancement under the Habitual Offender Law, overruling
 
 State ex rel. Porter v. Butler,
 
 573 So.2d 1106 (La.1991). However,
 
 Shaw
 
 did not involve a consecutive sentence. Therefore the court did not consider any reason under Article 883 that would allow for the further enhancement via consecutive sentences.
 

 [4]
 

 . We note that the purpose of the Habitual Offender law is to deter and punish repeat offenders.
 
 State v. Henry,
 
 42,416 (La.App. 2 Cir. 9/19/07), 966 So.2d 692,
 
 writ denied 2007-2227
 
 (La.8/29/08), 989 So.2d 95. Thus, the defendant’s criminal history and the risk of danger posed to the public indicated by that history are the concerns for the enhancement of the sentences for which the Habitual Offender law is aimed. On the other hand, recidivism is only one of the factors considered when imposing consecutive sentences for multiple offenses arising out of a single course of conduct.
 
 See
 
 note 5,
 
 infra.
 

 [5]
 

 . Among the factors to be considered are the defendant's criminal history,
 
 State v. Ortego,
 
 382 So.2d 921 (La.1980);
 
 State v. Jacobs,
 
 493 So.2d 766 (La.App. 2 Cir.1986); the gravity or dangerousness of the offense,
 
 State v. Adams,
 
 493 So.2d 835 (La.App. 2 Cir.),
 
 writ denied,
 
 496 So.2d 355 (1986); the viciousness of the crimes,
 
 State v. Clark,
 
 499 So.2d 332 (La.App. 4 Cir.1986); the harm done to the victims,
 
 State v. Lewis,
 
 430 So.2d 1286 (La. App. 1 Cir.),
 
 writ denied,
 
 435 So.2d 433 (1983); whether the defendant constitutes an unusual risk of danger to the public,
 
 State v. Jett,
 
 419 So.2d 844 (La.1982); defendant's apparent disregard for the property of others,
 
 State v. Parker,
 
 503 So.2d 643 (La.App. 4 Cir.1987); and the potential for defendant's rehabilitation,
 
 State v. Sherer,
 
 437 So.2d 276 (La.1983),
 
 State v. Lighten,
 
 516 So.2d 1266 (La.App. 2 Cir.1987). In each of these cases, one or more of the above factors was noted as justification for the imposition of consecutive sentences.