938 So.2d 1076 (2006)
STATE of Louisiana, Appellee
v.
Johnny Lee CAPERS, Appellant.
No. 41,231-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
Louisiana Appellate Project, by W. Jarred Franklin, for Appellant.
Paul J. Carmouche, District Attorney, Ron Christopher Stamps, Assistant District Attorney, for Appellee.
Before GASKINS, PEATROSS & DREW, JJ.
PEATROSS, J.
Defendant, Johnny Lee Capers, was convicted of two counts of armed robbery with a firearm. He was sentenced as a third-felony offender to two life sentences, to be served without benefits and to run concurrently. Defendant now appeals his conviction and sentence. For the reasons stated herein, Defendant's conviction is affirmed. Defendant's sentence is vacated *1077 and the matter is remanded for further proceedings.

FACTS
On April 11, 2004, between 5:30 and 6:00 a.m., Cassandra Alexander and Melissa Miller entered the Plantation Inn in Shreveport under the pretense of inquiring about a room. A few minutes later, Defendant, armed with a semi-automatic handgun and wearing a hooded jacket and a bandana over his face, entered the hotel and demanded that the desk clerk give him the money from the cash drawer. Defendant took approximately $800 and told the clerk to lie face down on the floor. Defendant also stole a money bag from a woman opening the restaurant at the hotel.
Between 6:30 and 7:00 a.m. on the same day, Alexander and Miller went into the Comfort Inn and began "asking for rooms and negotiating prices" with the desk clerk. Defendant walked into the lobby and, this time, jumped over the counter, pointed the gun at the clerk and demanded money. The clerk testified that Defendant held the gun about one foot away, took two or three hundred dollars and told the clerk that he would kill him "another time."
The hotels were equipped with surveillance cameras and videotapes of both robberies were entered into evidence. Corporal Danny Duddy testified that he found fingerprints of both female accomplices at the Comfort Inn, as well as a print of Defendant's left index finger and palm. Miller and Alexander testified about the events of that morning. They testified that it was Defendant's idea to rob the Plantation Inn. The women went in first to "distract the clerk" and look for cameras so that Defendant "could come in and rob him." Both women testified that Defendant wore a bandana over his face and a hooded pullover or sweater. Miller testified that, after they robbed the Plantation Inn, Defendant said he wanted to "hit another lick," which is street language for robbing another hotel. She stated that they used the same method to then rob the Comfort Inn. Alexander stated that she remembered Defendant jumping the counter at one robbery and saying that he would shoot during one robbery.
Defendant was charged with two counts of armed robbery under La. R.S. 14:64 with the bill of information detailing that he had used a handgun in the commission of those robberies. As previously stated, he was convicted of two counts of armed robbery with a firearm. Defendant was adjudicated a third-felony offender and sentenced to two life sentences without benefits, to be served concurrently. This appeal ensued.

DISCUSSION
Assignment No. 1 (verbatim): The evidence was insufficient to support the verdict.
The proper standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred *1078 from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.6/26/98), 719 So.2d 1048.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
In the case sub judice, Defendant notes that the evidence used to convict him consisted of the testimony of Alexander and Miller, as well as prints found at the scene. He claims that the prints could have been created at an earlier time, that the testimony of Alexander and Miller was "unbelievable" and that the two women are the only recognizable people on the videotapes. On the other hand, the State argues that an accomplice is qualified to testify and that the jury apparently found Alexander and Miller to be credible witnesses. The State also claims that the prints corroborate the testimony presented at trial and notes that fingerprints of both Alexander and Miller were found at the scene.
This record reveals that Defendant's accomplices entered the two hotels under the pretense of renting a room. The actual purpose was to "case the joint" or distract the clerk. Defendant then entered, wearing a bandana over his face and wielding a gun, and demanding that the desk clerk at each hotel give him the money in the cash drawers. At the Comfort Inn, Defendant jumped over the counter and held the gun on the clerk at close range, threatening to kill him "another time." Both incidents were captured on video and Defendant's palm print was found on the counter at the Comfort Inn and a fingerprint found at the scene.
Miller and Alexander identified Defendant as the perpetrator of the robberies of both hotels and testified that it was Defendant's idea to rob the hotels. Alexander stated that Defendant jumped the counter at one of the hotels and threatened to kill the clerk, which corroborates the testimony of Ramesh Venugopal, who was working at the Comfort Inn at the time of the robbery. The description of the clothing worn by Defendant given by both women supports the testimony of the two clerks and appears similar to the clothing worn by the man in the videotape. Further, fingerprints of both Alexander and Miller were found at the scene of the second robbery. Given the testimony of the clerks, police officers and the co-defendants, along with the videotapes and finger and palm prints entered into evidence, we conclude that the evidence presented, *1079 viewed in a light most favorable to the prosecution, is sufficient to support the convictions of armed robbery. This assignment is without merit.
Assignment No. 2 (verbatim): The trial court improperly found that the Defendant was a Third Felony Offender.
Defendant claims that the habitual offender adjudication was improper because the State "failed to prove when Appellant [sic] was released from State [sic] custody after his last prior conviction." The State argues that Defendant's "criminal history technically shows that he is a fourth felony offender," listing the following convictions in support of that assertion: a guilty plea to the charge of simple burglary on October 13, 1983; another conviction for simple burglary on March 18, 1986; and the commission of the two instant offenses on April 11, 2004. The State concludes that it proved, beyond a reasonable doubt, every element of the habitual offender bill.
Louisiana Revised Statute 15:529.1(C) provides:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.
Again, Defendant argues that the State failed to show that the prior convictions fell within the period mandated by La. R.S. 15:529.1(C), because the State failed to offer proof of Defendant's actual discharge date. We agree.
In State v. Boykin, 29,141 (La.App. 2d Cir.1/31/97), 688 So.2d 1250, reh'g denied, appeal after new sentencing hearing, 34,133 (La.App. 2d Cir.12/6/00), 774 So.2d 1074, appeal after new sentencing hearing, 36,989 (La.App. 2d Cir.3/5/03), 840 So.2d 64, writ denied, 03-1158 (La.11/14/03), 858 So.2d 416, this court observed:
This "cleansing period" begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311 (La.1977); State v. Metoyer, 612 So.2d 755 (La.App. 5th Cir.1992). The state has the burden of proving the date of defendant's discharge from state supervision. See State v. Lorio, 94-2591 (La.App. 4th Cir.09/28/95), 662 So.2d 128. Where a defendant has been adjudicated a habitual offender, the state's failure to prove the defendant's date of discharge and thus prove that the "cleansing period" has not expired is error patent on the face of the record. See State v. Bullock, 311 So.2d 242 (La. 1975); see also State v. Baker, 452 So.2d 737 (La.App. 1st Cir.1984).
In the case sub judice, we note that Defendant was incarcerated on the second simple burglary conviction on November 15, 1985. We find no evidence in the record showing the date of Defendant's release from state supervision for this simple burglary conviction. Likewise, the record does not contain the dates, if any, of an interruption or suspension of the 10-year *1080 period (subsequent to November 15, 1985) due to Defendant's incarceration for any other matter, as provided in 15:529(C). No such evidence was introduced at the habitual offender hearing. The only reference to Defendant's release date is contained in the State's brief on appeal, but we find nothing in the record to indicate that proof of this date (or any other dates of subsequent incarceration) was before the trial judge when Defendant was adjudicated a multiple offender. While the current offenses may very well fall within the statutory period, it is incumbent on the State to introduce evidence on remand supporting that conclusion. Without proof of this/these dates, it is impossible to calculate whether or not the current offenses fall within the statutory period. For this reason, the habitual offender adjudication and sentence are vacated and the case remanded for further proceedings. In light of this finding, we pretermit any discussion of Defendant's assignment of error urging that his sentence is excessive.

CONCLUSION
For the reasons set forth above, Defendant's conviction is AFFIRMED. Defendant's habitual offender adjudication and sentence are VACATED and the matter is REMANDED for further proceedings.
CONVICTION AFFIRMED; HABITUAL OFFENDER ADJUDICATION VACATED AND REMANDED FOR FURTHER PROCEEDINGS.