MOORE, J.
L Originally convicted of conspiracy to distribute methamphetamine and sentenced to 15 years at hard labor, Raymond Casaday was adjudicated a fourth felony offender and sentenced to 30 years at hard labor. He now appeals that adjudication and sentence, For the reasons expressed, we affirm the conviction but vacate the adjudication as a fourth felony offender and remand for further proceedings'.
■FACTS
In November 2009, the Bienville Parish Sheriffs Office arranged for an undercover agent to buy an eight-ball (3½ grams) of methamphetamine from Tenia “Dee Dee” Kelley in a designated location in Jamestown, Louisiana. The agent gave her $300 and she drove off, not returning for several hours; deputies determined that she was at Raymond Casaday’s house, about a mile away. Ms. Kelley eventually returned and gave the undercover agent a plastic bag containing methamphetamine. After being arrested, charged and pleading guilty to distribution of methamphetamine, Ms. Kelley testified at Casaday’s trial that she had carried the money to his house and that he actually procured the eight-ball that she delivered to the undercover agent. Casaday was charged with conspiracy to distribute a Schedule II CDS, convicted in a jury trial in 2013, and sentenced to 15 years at hard labor. This court affirmed his conviction and sentence, State v. Casaday, 49,679 (La,App. 2 Cir. 2/27/15), 162 So.3d 578, writ denied, 2015-0607 (La. 2/5/16), 186 So.3d 1162.
The state then charged Casaday as a fourth felony offender. It alleged three predicate convictions:
h(l) February 25, 1985—guilty plea to burglary of a habitation, in 13th Judicial District Court, Navarro County, Texas, for which he received a sentence of six years;
(2) February 26, 1986—guilty plea to theft of an automobile, in 10th Judicial District Court, Natchitoches Parish, La,, for which, he received a sentence of six years; and
(3) October 24, 1991—guilty pleas to attempted capital murder, burglary *111 of a motor vehicle and burglary of a building, in 9th Judicial District Court, Trinity County, Texas, for which he received a sentence of 35 years.
Through appointed counsel, Casaday moved to quash the habitual offender bill on grounds that he had not been fully advised of his rights when he entered the guilty pleas to the predicate offenses. At a hearing in December 2015, Casaday accused his new appointed counsel, Mary Ellen Halterman, of “threatening” him, colluding with the prosecutor, and “doing nothing” on his case. He asked the court to remove her; the court refused.
At the hearing on the habitual offender bill, the state offered various documents to prove the predicate offenses:
(1) 1985 conviction - certified copy of the true judgment, application to waive trial by jury, stipulation of evidence, order granting probation;
(2) 1986 conviction - certified copies of bill of information and of guilty plea, and affidavit waiving trial rights; and
(3) 1991 conviction - copies of indictment, court minutes and judgment on plea of guilty.
The state also called a fingerprint expert, Owen McDonnell, who took Casa-day’s exemplar prints in open court. He compared these with the latent prints on the records from the 1985 and 1991 convictions (there were no fingerprints in the file for the 1986 conviction) and confirmed they were from the same person. The defense put on no evidence, but counsel argued that because all the predicates were over 10 years old, the state was required Jato prove that they had not “aged off.” By post-trial memo, she argued the state offered no evidence to show when Casaday had been released from custody and supervision on any of the predicates. She also argued that the documents in support of the 1991 conviction did not show that Ca-saday had been advised of and waived his right against self-incrimination.
The court issued written reasons finding that Casaday was a sixth felony offender (counting the three offenses constituting the 1991 conviction separately), that none of the predicates had expired for time limitations, that Casaday was represented by legal counsel at each predicate plea, that the sentence range was 30 years to life, and that he would be sentenced-to 30 years. At a hearing on August 10,2016, the court vacated the prior sentence of 15 years and corrected itself - the actual sentence range was 20 years, to life - but imposed the 30 years assigned in the written reasons.
This appeal followed.
DISCUSSION

Validity of Habitual Offender Adjudication

By his first assignment of error, Casaday urges the evidence was insufficient to support the adjudication as a fourth felony offender. He argues the state offered no evidence of when he was released from custody on the underlying offenses, and thus failed to prove that the 10-year cleansing period had not elapsed, as occurred in State v. Boykin, 34,133 (La. App. 2 Cir. 12/6/00), 774 So.2d 1074, and as noted in dictum in State v. Ignot, 29,745 (La.App. 2 Cir. 9/24/97), 701 So.2d 1001, writ denied, 99-0336 (La. 6/18/99), 745 So.2d 618. Specifically, he contends that the state cannot rely on the fact that the sentence in 1991 was 35 years, without providing any proof as to when his supervision actually terminated. Further, |4he argues that the evidence offered in support of the 1991 conviction did not show he waived the privilege against self-incrimina *112 tion, an element of proof required in State v. McGinnis, 413 So.2d 1307 (La. 1981). He concedes that out-of-state predicate offenses are subject to a different standard of review from Louisiana guilty pleas entered after December 8,1971, a point reaffirmed in State v. Balsano, 2009-0735 (La. 6/19/09), 11 So.3d 475. However, he maintains that Balsano relied on a transcript of the Boykin colloquy[1] to find a knowing and voluntary waiver of rights; because there is no transcript in the instant record, he contends, the court could not find a valid waiver.
The state responds that the cleansing period has evolved over the years,[2] but the statute now provides that the current offense cannot be counted as a multiple offense “if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses.” La. R.S. 15:529.1 C (emphasis added). The state argues that Casaday’s 1986 and 1991 guilty pleas obviously came within the imposed sentences for the preceding offenses and applicable cleansing periods. RWhen he pled guilty to multiple felonies in 1991, he drew a 35-year sentence, which would not be completed until 2026, so the cleansing period could not possibly have expired in 2009. The state further shows that an out-of-state guilty plea is subject to a “totality of the circumstances” review, State v. Balsano, supra, and the defendant must show more than a technical violation to prove that the plea was not knowing and voluntary, State v. Morgan, 2013-1495 (La. 2/28/14), 134 So.3d 1160. Even though it offered no transcript of the Trinity County guilty pleas, the state submits that the court minutes and judgments on those guilty pleas proved a knowing and voluntary waiver of his constitutional rights.
The habitual offender law is inapplicable in cases where a certain amount of time has lapsed between the expiration of the maximum sentence for a prior conviction and the time of the commission of the following offense. La. R.S. 15:529.1 C. The cleansing period to be applied is the one in effect at the time the defendant committed the following offense. State v. Rolen, 95-0347 (La. 9/15/95), 662 So.2d 446; State v. Boykin, supra.
Despite the statute’s reference to “the expiration of the maximum sentence” as the starting point for the cleansing period, the Louisiana Supreme Court has long held that the actual discharge date is what activates the cleansing period:
The statutory intent, thus, is that a sentence expires when the prisoner is discharged from state custody and supervision, not when the theoretical date arrives on which the initial sentence would have terminated. Thus, when a convicted person is discharged earlier (as well as later) than the expiration *113 date of the sentence initially sentenced, then the actual maximum sentence is that determined by his date of legal discharge, whether extended through revocation of parole or shortened by law due to “good time” diminution of the initial sentence. It is not until the date of actual discharge that the individual has fully paid his debt to society, insofar as owed because of an offense for which he has been convicted.
State v. Anderson, 349 So.2d 311 (La. 1977); State ex rel. Wilson v. Maggio, 422 So.2d 1121 (La. 1982); State v. Washington, 2005-1330 (La. 4/28/06), 927 So.2d 271; State v. Boykin, supra.
The state’s failure to prove the defendant’s date of discharge, and thus prove that the cleansing period has not expired, is error patent on the face of the record. State v. Bullock, 311 So.2d 242 (La. 1975); State v. Robinson, 47,427 (La.App. 2 Cir. 10/3/12), 105 So.3d 751; State v. Hall, 2014-1046 (La.App. 4 Cir. 5/13/15), 172 So.3d 61, writ denied, 2015-0977 (La. 6/5/15), 169 So.3d 348 (collecting cases); State v. Baker, 452 So.2d 737 (La. App. 1 Cir. 1984).
On close review, we are constrained to find that this record does not disclose Cas-saday’s date of actual discharge from the Texas Department of Criminal Justice on his 1991 convictions. The state urged, and the district court accepted, that Casaday received a 35-year sentence in 1991; this would not end until 2026; ergo, he must have been still under state custody and supervision (plus 10 years) when the instant offense occurred in 2009. As in State v. Capers, supra, we agree that the instant offense “may very well fall within the statutory period,” but this is only theoretical. Id. at 7, 938 So.2d 1076, 1080 (La.App. 2 Cir. 2006). It is equally obvious that Casa-day was at liberty in Bienville Parish in 2009; we can only speculate as to when he was released. Without proof, we cannot find beyond a reasonable doubt that the instant offense occurred before 10 years after Casaday’s actual discharge. The adjudication will be vacated and the matter remanded for further proceedings.
With this finding, we need to address Casaday’s other claim, an alleged deficiency in the 1991 guilty plea colloquy, only briefly. The state correctly shows our current law:
17[F]or guilty pleas entered in Louisiana before December 8, 1971, and for all non-Louisiana guilty pleas, used to enhance sentence following a subsequent conviction, a defendant does not satisfy his burden of proof on collateral attack merely by presenting contemporaneous records revealing a violation of Jackson’s three-right rule.[3] He must show * * * that his guilty plea was not voluntary as a constitutional matter, i.e., that it did not represent a knowing and voluntary choice among available alternatives.
State v. Balsamo, supra at 13-14, 11 So.3d at 482.
In the absence of a “perfect transcript” of the defendant’s guilty plea, the district court must weigh the available evidence to determine whether the state has met its burden of proving that the prior guilty plea was informed and voluntary, and made with an articulated waiver of his three Boykin rights. State v. Zachary, 2001-3191 (La. 10/25/02), 829 So.2d 405; State v. Small, 50,388 (La.App. 2 Cir. 2/24/16), 189 So.3d 1129, writ denied, 2016-0533 (La. 3/13/17), 212 So.3d 1158.
*114 The court minutes from 1991 recite that Casaday was “admonished”; the judgments on pleas of guilty show that he was represented by counsel, that he was advised of his right to jury trial and range of punishment, that he was mentally competent, and that the plea was free and voluntary. For this out-of-state guilty plea, .the omission of mention of the right against self-incrimination is a technical deficiency which shifted the burden to the defense to produce affirmative evidence of an infringement of his rights or a procedural irregularity. State v. Shelton, 621 So.2d 769 (La. 1993); State v. Bobo, 46,225 (La.App. 2 Cir. 6/8/11), 77 So.3d 1, writ denied, 2011-1524 (La. 12/16/11), 76 So.3d 1202 (collecting cases). As in Bobo, the flaw in the judgment, without positive proof, will not defeat the overall showing of a | «knowing and voluntary plea. On remand, if Casaday has affirmative evidence, he may produce it. On the instant record, we would find no reversible error.
For the reasons expressed, this assignment of error has merit. The adjudication is vacated and the case remanded for further proceedings.

Motion to Replace Appointed Counsel

By his second assignment of error,. Casaday urges the court erred in failing to appoint different counsel to represent him when it was clear counsel could not be effective given the communication issues and distrust exhibited by the defendant. The right to counsel is the right to effective assistance óf counsel. State v. Thomas, 2012-1410 (La. 9/4/13), 124 So.3d 1049. He shows that oh the day originally set for the habitual offender hearing, December 9, 2015, he told the court that his appointed attorney, Ms. Halterman, had threatened him, refused to provide him with paperwork relative to the proceedings, and (in Casada/s view) was colluding with the prosecutor. Ms. Halterman admitted .that Casaday became “extremely agitated” and “highly irritated” when she asked him if he had any motions pending before the Supreme Court on the underlying conviction. The court denied his oral motion to remove Ms. Halterman. Several days later, Casaday filed a pro. se .motion to “withdraw and substitute counsel.” This alleged a conflict of interest, lack of interest in the case, displeasure with counsel’s “attitude and representation,” and “failure to act professional.” The district court summarily" denied this as “already heard.” He now argues this was an abuse of the court’s discretion, as he no longer, trusts Ms. Halterman and cannot communicate with her.
|nThe state responds that a criminal defendant who has been appointed counsel has no right under the Sixth Amendment to counsel of his choice but only to adequate representation. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989); Wheat v. United States, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). It asserts that a defendant’s refusal to cooperate with appointed counsel is not grounds to remove the counsel. Further, the state urges that Casaday has made no showing that Ms. Halterman was ineffective, under the test established by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The Sixth Amendment guarantees the accused the right to have the assistance of counsel for his defense. Ü.S. Const., amend. 6. The Louisiana Constitution also guarantees “the assistance of counsel of his choice, or appointed by the court if he is 'indigent and charged with an offense punishable by imprisonment.” La. Const, art. 1, § 13. The Supreme Court has stated: ' '
An indigent defendant does not have the right to have a particular attorney ap *115 pointed to represent him. An indigent’s right to choose his counsel only extends. so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in. courts and cannot be used to thwart the administration of justice. * * * The question of withdrawal of counsel rests with the discretion of the trial judge, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion.
State v. Leger, 2005-0011, pp. 43-44 (La. 7/10/06), 936 So.2d 108, 142, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (internal citations omitted).
The Rules of Professional Conduct prohibit a lawyer from representing a client if the representation involves a concurrent conflict of interest. R.P.C. 1.7 (a).
hoThis record presents no basis for reversing the district court’s refusal to remove Ms. Halterman. If there are any communication issues, they can be traced directly to Casaday, who had already gone through two appointed lawyers before receiving Ms. Halterman, The court did not abuse its discretion in finding that Casa-da/s refusal to cooperate with his third appointed lawyer implied a motive to manipulate the court and delay the proceedings. We perceive no abuse of discretion.
The colloquy from December 9, 2015, is abundantly clear that Ms. Halterman had given Casaday copies of discovery requests that she received from the state. This is not collusion with the prosecutor. He also did not grasp that Ms. Halterman was asking about the status of his appeal in the underlying offense, conspiracy to distribute methamphetamine. This was obviously relevant to the habitual offender proceeding and was not an invasion of privacy. The record does not support Casaday’s claim of a conflict of interest.
. Finally, we note that a claim of ineffective assistance of counsel is usually relegated to post conviction relief, where a record can be developed. La. C. Cr. P. art. 930; State v. Thomas, 2015-1110 (La. 11/18/16), 206 So.3d 866; State v. Warren, 50,147 (La.App. 2 Cir. 9/30/15), 181 So.3d 166, writ denied, 2015-1963 (La. 12/5/16), 210 So.3d 809, At this stage, Casaday has made absolutely no showing that Ms. Hal-terman’s conduct fell below the standards of reasonableness and competency as informed by prevailing professional standards demanded of attorneys in criminal cases. Strickland v, Washington, supra. If he develops such evidence, he may raise it by timely application for post conviction relief.
This assignment of error lacks merit.
JyCQNCLUSION ■
By his third assignment of error, Casa-day urges the district court imposed an excessive sentence. He contends the court failed to articulate a basis for the sentence imposed, failed to order a presentence investigation report, attached undue weight to “stale” convictions, and imposed a sentence twice as long as that originally imposed.
Because we are reversing the adjudication as a fourth felony offender and remanding the case for further proceedings, we pretermit any consideration of the sentence. On final adjudication and sentence, Casaday will have his standard appellate rights,
CONVICTION AFFIRMED. ADJUDICATION AS FOURTH FELONY OFFENDER VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS.
■ BROWN,,C.J.) dissents with written reasons. .

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), held that before a defendant enters a plea of guilty to a felony charge, the trial judge must question him and confirm for the record that he has made an express and knowing waiver of (1) his right to a jury trial, (2) his privilege against self-incrimination and (3) his right to confront the witnesses against him.

. The state recites that the cleansing period was five years in 1985 and 1986, and had increased to 10 years by 1991. In fact, it was not raised to 10 years until August 15, 1995. 1995 La. Acts No, 839, § 1.

. State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), formally applied the three-right rule of Boykin v. Alabama, supra, to Louisiana state cases.