# NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-897

STATE OF LOUISIANA

VERSUS

RICHARD WAYNE BARRAS

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 11173-18
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry and Charlie G. Fitzgerald, Judges.

**AFFIRMED.**

John F. DeRosier, District Attorney
Jacob Johnson, Assistant District Attorney
901 Lakeshore Drive, Suite 800
Lake Charles, LA 70601
(337) 437-3400
COUNSEL FOR APPELLEE:
        State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
P.O. Box 1641
Lake Charles, LA 70602
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
        Richard Wayne Barras

**COOKS, Chief Judge.**

Defendant, Richard Wayne Barras, appeals his conviction on two counts of attempted first degree rape, habitual offender adjudication, and sentence of two consecutive life terms. For the following reasons, we affirm Defendant's convictions, habitual offender adjudication, and sentences.

## FACTS AND PROCEDURAL HISTORY

The facts establish on May 25, 2018, seventy-year-old D.N.[1] went outside at approximately 7:00 a.m. to water her garden at her Lake Charles home. Defendant approached her and said something to her, but D.N. only speaks Vietnamese.[2] She believed he was offering to cut the grass, so she said, "No, no." He then approached her, and she became frightened and ran. He caught her as she made it to the bottom step of her home and began pulling her pants down and pulling her down by her neck. He also grabbed her underneath her buttocks and her vaginal area. During the struggle, she felt his genitalia against her and could tell he was not wearing underwear. Her screams awoke her husband, who came outside. At this point Defendant fled. D.N. initially did not specifically identify her attacker in open court. Initially, her husband did not either but later at trial stated he remembered the attacker and identified him.[3] The State recalled the victim, who at this point identified Defendant as her attacker. D.N.'s neighbor, Trudy Veillon, testified she heard D.N. screaming and looked out of her bathroom window. She saw the victim struggling with a black male. She stated the victim's pants were down.

About two miles away on the same morning, seventy-three-year-old M.S. went outside in her robe and nightgown to take out some trash. Defendant approached her and asked, "Hey lady, can you help me?" She told him "No" and

---

[1]As the crimes at issue are sex offenses, we use the victims' initials in accordance with La.R.S. 46:1844(W).

[2] D.N., as well as her husband, spoke through a court-appointed interpreter at trial.

[3]The circumstances of the identification form the subject of one of the assignments of error.

backed up. Defendant grabbed her and whispered in her ear, "I want some p---y." During their struggle, he knocked her to the ground and choked her. At some point, she felt his penis touch her vagina. Her neighbors heard her screams and came to her aid. Defendant jumped up and tried to zip his pants, then fled. M.S. specifically identified Defendant at trial as her attacker. The victim's neighbor, James Mitchell, testified he heard a scream that morning, after which he ran to the victim's yard and saw a black male on top of her, between her legs. He noted that both of Defendant's hands were in the area of her neck and head. Mitchell yelled at Defendant, who then got up, hitched up his pants, and then fled the area. Mitchell's girlfriend, Mathilda Perez, who was having coffee with him, also heard M.S. screaming for help. She followed Mitchell, and both ran to the victim's yard and saw a man on top of the victim. She stated Defendant's hands were on the victim's neck and face. When Mitchell yelled at him, Defendant jumped up and fled. Police recovered doorbell camera footage that showed Defendant approaching the area and later running away, with Mitchell in pursuit. Another area camera recorded Defendant's vehicle in the area and helped police locate him via use of the license plate number.

On June 14, 2018, the State of Louisiana filed a bill of information charging Defendant, Richard Wayne Barras, with two counts of attempted first degree rape, in violation of La.R.S. 14:27 and 14:42. After various pretrial hearings, on April 29, 2019, the parties began selecting a jury. After a three-day trial beginning on May 1, 2019, the jury found Defendant guilty as charged on both counts.

On May 7, 2020, the State filed a bill of information charging Defendant as a habitual offender. The district court conducted a hearing on May 24 and determined Defendant was a fourth habitual offender. On the same date, the court sentenced him to two consecutive life terms.

Defendant now seeks review by this court, assigning five errors. For the following reasons, we affirm Defendant's convictions, habitual offender adjudication, and sentences.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant argues the evidence adduced against him at trial was insufficient to support his convictions. He argues the State did not prove he had the specific intent to rape either woman and questions whether he was sufficiently identified as the offender who attacked D.N.

The analysis for sufficiency of evidence claims is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

First degree rape is defined by La.R.S 14:42, which states, in pertinent part: "First degree rape is a rape committed upon a person sixty-five years of age or older[.]" "Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La.R.S. 14:41(A). Further, attempt is defined by La.R.S. 14:27(A): "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have

3

actually accomplished his purpose." Thus, as Defendant asserts, attempted first degree rape is a specific intent crime.

We find the facts establish Defendant had the specific intent to rape each of the elderly victims. In the case of M.S., the State presented evidence that Defendant told her that he wanted to commit a sex act, knocked her to the ground, got on top of her, and opened or lowered his shorts. During the struggle, he choked her and/or covered her mouth. The victim testified that she felt his penis near her vagina. Defendant implicitly acknowledges in his brief that he was on top of the victim at some point, as he argues the testimony was conflicting regarding whether he was straddling her or between her legs. Defendant also notes evidence that an offender who grabs a victim while declaring his intention to have sexual intercourse can support a conviction for attempted rape, citing *State v. Parish*, 405 So.2d 1080 (La.1981). However, he tries to distinguish *Parish*, arguing the facts therein offer a more clear-cut case, as the offender explicitly used the word "rape" while threatening the victim, and also moved her to the bedroom.

In a statement to police, Defendant admitted being on the scene and knocking the victim down, albeit accidentally. Taken in combination with the fact there was testimony from the victim and witnesses that Defendant was on top of her, we find there was sufficient evidence for the jury to determine that Defendant had the specific intent to rape M.S. As for the identification issue, the victim identified him at trial. Further, security camera footage placed him in the immediate vicinity of the attack, and a second camera showed his vehicle in the area and lead to his apprehension. In a statement to police, Defendant claimed he simply bumped into an elderly white woman in a yard as he was leaving his girlfriend's house. According to him, they both fell down. However, Defendant's alleged girlfriend informed police they had stopped dating three months before the attack. Further, M.S. indicated to police that she bit her attacker. When they arrested Defendant,

4

police noted a bite mark and scratches on him. In addition, police located Defendant's DNA under the victim's fingernails.

Defendant makes credibility-based arguments alleging that the record is unclear regarding whether he put one or both hands on the victim's neck, whether he was between her legs, and whether he exposed his penis. M.S. and her neighbor, James Mitchell, affirmed that Defendant was between her legs. Although M.S., Mitchell, and Perez all acknowledged some uncertainty regarding exactly where Defendant's hands were, all three affirmed his hands were in the area of the victim's neck and face. The record also establishes M.S. incurred some facial injuries as a result of the attempted rape. The victim's neighbors did not see Defendant's penis, but Mitchell noticed Defendant hitching up his pants as he rose. Such matters of credibility or weight are squarely within the province of the jury.

Regarding the other victim, D.N., the victim and her husband eventually identified Defendant as her attacker. Further, D.N. and her neighbor testified that the victim's pants were pulled down. D.N. also testified Defendant touched her under her buttocks and vaginal area, and she felt his genitals against her, albeit through his clothes. This evidence formed a sufficient basis for a rational jury to determine that Defendant had specific intent to rape D.N.

Defendant devotes a significant amount of argument to unusual circumstances that arose during trial. As already noted, D.N. was initially unable to identify Defendant and left the stand without doing so. Her husband began his testimony, and he also did not initially identify Defendant as the attacker. However, D.N. apparently recognized Defendant after sitting in the gallery, became agitated, and began gesturing. She soon left the courtroom; soon after she did so, her husband indicated that he recognized Defendant. He also raises this issue under other assignments which gives rise to a potential legal issue. However, such an issue is not part of a sufficiency review under *Jackson* and *Kennerson*. Generally, a *Jackson*

5

review does not examine the *quality* of trial evidence. As noted in *Kennerson*, matters of weight and credibility are reserved to the factfinder; questions of admissibility are also outside the parameters of a *Jackson* review. *State v. Hearold*, 603 So.2d 731 (La.1992). Defendant cites *State v. Spooner*, 550 So.2d 1289 (La.App. 1 Cir. 1989), *writ denied*, 566 So.2d 394 (La.1990), but its analysis focuses on a motion for mistrial, not sufficiency.

For the reasons discussed, we find Defendant's sufficiency of the evidence argument lacks merit. However, we will address the issue of D.N.'s identification further in the assignments which follow.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant argues the district court erred by denying his motion for severance of the offenses at trial. Defendant acknowledges that such rulings are reviewed for abuse of discretion. *State v. Washington*, 386 So.2d 1368 (La.1980).

The district court heard Defendant's motion to sever on October 2, 2018. Defendant argued that the cases involve two different victims and that the testimony of each victim might prejudice Defendant regarding the other victim. The State countered that the crimes were similar to one another, as both involved attempted sexual assaults against elderly women in their yards and occurred within an hour of one another.

In making its ruling, the district court cited La.Code Crim. P. art. 493, which provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

6

The district court also cited La.Code Crim.P. art. 495.1:

> If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

The court also referenced *State v. Brooks*, 541 So.2d 801 (La.1989) and *Washington*. *Brooks* explained:

> The motion to sever is addressed to the sound discretion of the trial court and the court's ruling should not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Williams,* 418 So.2d 562, 564 (La.1982). In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. In determining whether joinder will be prejudicial, the court should consider the following:
>
> > whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant would be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile.
>
> *State v. Washington,* 386 So.2d 1368, 1371 (La.1980) (citations omitted).

> Defendant argues joinder is improper under *State v. Carter,* 352 So.2d 607 (La.1977). That decision has been superseded by amendment of La.C.Cr.P. art. 495.1 and our more recent jurisprudence interpreting the article. Under the new article, severance need not be granted if prejudice can be effectively avoided by other safeguards.

> > [T]here is no prejudicial effect from the joinder of two or more offenses when the evidence of each offense is relatively simple and distinct, even though such evidence might not have been admissible in separate trials of the offenses because, with a proper charge, the jury can easily keep the evidence of each offense separate in its deliberations.
>
> *State v. Celestine,* 452 So.2d 676, 680 (La.1984) (citations omitted).

*Brooks,* 541 So.2d at 804-05.

The court found that the two offenses were similar, factually connected, were part of a common scheme or plan, and not unduly prejudicial. The court reasoned that any potential confusion for the trial jury could be eliminated by the jury instructions and the facts the jury would hear throughout the course of the trial.

Defendant also argues that the modus operandi in each offense was distinct; however, we find the assaults and offenses were similar in methodology. Moreover, it was logical for the district court to conclude that the joinder of the offenses was not unduly prejudicial, as the cases were both strong from a sufficiency standpoint, being supported by testimony from eyewitnesses. We cannot say the district court abused its discretion by denying the motion to sever.

## ASSIGNMENT OF ERROR NOS. 3 & 4

Defendant combines his arguments regarding his third and fourth assignments of error into a single contention. As he notes, both his motion for mistrial and his motion for new trial were based upon the unusual sequence of events that led to the in-court identification of Defendant by D.N.'s husband and later by D.N. Defendant suggests the husband's identification of him was prompted by D.N.'s actions in the gallery of the courtroom when she apparently recognized Defendant and began gesturing towards Defendant. After D.N. was escorted from the courtroom by a victim's service's representative, her husband identified Defendant as the attacker when asked by the State. D.N. was later recalled and positively identified Defendant as her attacker.

The court examined witnesses outside the jury's presence to determine whether D.N. alerted the testifying witness, her husband, to Defendant's presence in the courtroom and his identity. Trial counsel asked either that the testimony of D.N.'s husband be stricken or that the court grant a mistrial. The court then advised counsel to state which form of relief he was requesting. Counsel repeated his request

that the testimony be stricken and asked for the jury to be admonished. Counsel suggested that mistrial might be appropriate but provided no authority for that assertion. After further argument, counsel reiterated his alternative requests. The court denied relief, finding that there had been no coaching or collusion regarding D.N.'s husband. Defendant objected to the ruling. Later, at the close of day, the State and Defendant both rested.

The next day, Defendant made a specific motion for mistrial, reiterating his previous arguments. The district court denied the motion and noted Defendant's objection. The court expressed doubt as to whether the formal motion was timely, as Defendant had rested; however, it noted that the substance of the argument had been considered the previous day.

Defendant cited La.Code Crim.P. art. 770, which states:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> (1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> (3) The failure of the defendant to testify in his own defense; or
>
> (4) The refusal of the judge to direct a verdict.
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

Defendant also cited La.Code Crim.P. art. 775:

> A mistrial may be ordered, and in a jury case the jury dismissed, when:
>
> (1) The defendant consents thereto;
>
> (2) The jury is unable to agree upon a verdict;

(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;

(4) The court finds that the defendant does not have the mental capacity to proceed;

(5) It is physically impossible to proceed with the trial in conformity with law; or

(6) False statements of a juror on voir dire prevent a fair trial.

Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.

We find that La.Code Crim.P. art. 770 does not apply, as remarks by the judge, a prosecutor, or a court official are not at issue.[4] As to La.Code Crim.P. art. 775, it is well-settled law that mistrial is a drastic remedy to be used only when a defendant has suffered substantial prejudice. *State v. Smith*, 418 So.2d 515 (La.1982). A district court's ruling on a mistrial is reviewed for abuse of discretion. *See, e.g., State v. Hutchinson*, 18-445 (La.App. 3 Cir. 12/12/18), 261 So.3d 927, *writ denied*, 19-108 (La. 5/28/19), 273 So.3d 313, *cert. denied*, __ U.S. __ , 140 S.Ct. 648 (2019). We cannot say the district court abused its discretion in denying the mistrial motion. As discussed, the court conducted a hearing to determine whether D.N. alerted her husband, during his testimony, to Defendant's identity. The court determined that she did not so alert her husband, and we find Defendant fails to demonstrate the court abused its discretion in this finding.

Regarding Defendant's motion for new trial, he filed it in writing on May 7, 2019, referring back to the incident already discussed, in which a question arose

---

[4] Louisiana Code of Criminal Procedure Article 25.1 requires the court to appoint an interpreter for a non-English speaking person who is a principal party in interest or a witness in a proceeding before the court after consultation with the non-English speaking person or his attorney. An interpreter should be a neutral and detached individual whose abilities are screened by the court. *State v. Davis*, 07-544 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 68, *writ denied*, 08-380 (La. 9/19/08), 992 So.2d 952. Defendant makes no argument that the interpreter was a "court official" or that the interpreter was not neutral and detached.

regarding whether D.N. improperly prompted her husband's in-court identification of Defendant. He also complained that the district court should not have allowed D.N. to re-take the stand and identify Defendant herself. He does not maintain that argument on appeal.

As already noted, the issue of whether D.N. prompted her husband was the basis of Defendant's argument for mistrial. In his motion for mistrial, he claimed that the court's denial of the motion unfairly prejudiced him and said prejudice entitled him to a new trial. Alternatively, he argued that he should receive a new trial pursuant to the interests of justice, citing La.Code Crim.P. art. 851(B). The court denied the motion. A ruling on a motion for new trial to serve the interests of justice is reviewed for abuse of discretion. *State v. Guillory*, 10-1231 (La. 10/8/10), 45 So.3d 612.

On appeal, Defendant again suggests that the identification testimony by D.N.'s husband was prompted by her actions in the gallery of the courtroom. This underlying premise has already been discussed. The other issue he raises is the in-court identification made by the victim. He contends it was tainted, arguing that there was "media exposure" and that at some point before trial, a neighbor had shown her a photo of Defendant on a cell phone. Defendant in brief does not identify any alleged media exposure nor exactly how the victim's testimony was tainted.

Detective James Jones testified that police did not show the victim any photo lineups because they were aware the offense had been covered by television news and social media. Also, a neighbor had shown the victim a press release on the neighbor's cellphone. Thus, investigators elected not to risk affecting the victim's identification via a photo identification. Apparently, the neighbor showed her the press release within days of the offense. Despite the neighbor's action, this case is not a typical "suggestive identification" case, as the victim did not readily recognize Defendant, so it was not clear that the identification had been suggested to her in

some way. In the cases cited by Defendant, the witnesses viewed photo lineups of the defendant shortly before the respective trials. Such a procedure logically raises the specter of a suggestive identification. In the present case, the victim apparently saw a photo of Defendant within a few days of the offense but many months before the trial occurred.

Further, this is not the argument Defendant made in the district court. As noted earlier, he argued in his written motion that it was procedurally improper to recall the victim to the stand. A new and different argument may not be raised for the first time on appeal. Uniform Rules—Courts of Appeal, Rule 1-3; *State v. Perkins,* 07-423, p. 7 (La.App. 3 Cir. 10/31/07), 968 So.2d 1178, 1183, *writ denied,* 07-2408 (La. 5/9/08), 980 So.2d 688. Therefore, Defendant's argument regarding his motion for new trial fails.

Lastly, Defendant argues that an error patent occurred at his habitual offender adjudication, in that the State failed to show the "cleansing period" had not elapsed. The State cites La.R.S. 15:529.1(C)(1):

> Except as provided in Paragraphs (2) and (3) of this Subsection, the current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than five years have elapsed between the date of the commission of the current offense or offenses and the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for the previous conviction or convictions, or between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, for each preceding conviction or convictions alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided in this Paragraph, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of the five-year periods between the expiration of the correctional supervision, or term of imprisonment if the offender is not placed on supervision following imprisonment, and the next succeeding offense or offenses.

Defendant is correct in observing that in a habitual offender proceeding, the

State must prove that the five-year "cleansing period' has not elapsed between offenses. In setting forth such proof, the State must show the actual discharge date for the relevant predicate offense or offenses. *See, e.g., State v. Casaday*, 51,330 (La.App. 2 Cir. 5/17/17), 223 So.3d 108. Evidence on this issue may be supported with such materials as records from predicate offenses, "rap sheets," and parole board documents. *See, e.g., State v. Martin*, 17-1100 (La.App. 1 Cir. 2/27/18), 243 So.3d 56, *writ denied*, 18-568 (La. 3/6/18), 266 So.3d 901.

In the present case, the State introduced the "pen packet" and the minutes related to each relevant offense. As the State observes in its brief, the documents demonstrate that Defendant was not discharged for a charge bearing district court docket number 07-6564 until May 9, 2011. Another exhibit shows the State filed another set of charges against him in 2011 under district court docket numbers 41487-11 and 40099 for an offense committed in September of that year. On February 17, 2012, the court sentenced him to ten years with all but two years suspended, to be followed by five years of probation. Defendant's rap sheet indicates authorities released him for "good time" in September 2012, but his probation was revoked in September of 2014. At the time of Defendant's revocation, he also pled guilty to new felony charges under docket number 6521-14, and the court sentenced him to serve concurrent five-year sentences with the first of each to be served without benefit of parole, probation, or suspension of sentence. Regarding the revocation, the court ordered that he serve the remainder of the original ten-year sentences, to run concurrently. The offenses listed in the bill of information under docket number 6521-14 were committed in November and December of 2013.

The Department of Public Safety and Corrections again released Defendant for "good time" on January 19, 2018. As discussed earlier, the most recent offenses at issue, the two attempted rapes, occurred in May of 2018. Based on the timeline discussed, the State demonstrated that the cleansing period never elapsed and thus

the habitual offender adjudication was valid. As the State argued in the district court, Defendant has been in a state of virtually chronic incarceration since 2007. Any time-gap between the pertinent offenses was a matter of mere months.

## ASSIGNMENT OF ERROR NO. 5

In his final assignment of error, Defendant argues his consecutive life sentences are excessive. At trial, he objected to the sentences without elaboration. Subsequently, he filed a written motion alleging that the sentences were excessive, which was denied by the district court. As a fourth habitual offender, Defendant was subject to sentencing as set forth in La.R.S. 15:529.1, which states in pertinent part:

> A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
>
> . . . .
>
> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply:
>
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.
>
> (b) If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

Both underlying crimes were attempted first degree rapes and thus carried potential sentences of ten to fifty years, pursuant to La.R.S. 14:27(D)(1)(a) and La.R.S 14:42(D). Pursuant to La.R.S. 15:529.1(4)(a), the potential term was "not less that the longest prescribed for a first conviction but in no event less than twenty

14

years and not more than his natural life."

This court in *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59, details the proper analysis for an excessive-sentence claim:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. "'[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.'" *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> The fifth circuit, in [*State v.*] *Lisotta*, [98-648 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57,] 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:
>
> 1. The nature of the crime,
>
> 2. The nature and background of the offender, and
>
> 3. The sentence imposed for similar crimes by the same court and other courts.

The district court in its sentencing recognized the nature of the offenses involved violence and physical and emotional trauma for the victims. As for the nature of the offender, the district court noted Defendant has been a continual criminal offender since 2007. The court also expressed concern regarding Defendant's apparent escalation from burglar to rapist. Defendant physically assaulted two vulnerable victims, both of them elderly women, with the intent to rape each of them. We do not find the district court abused its sentencing discretion by ordering maximum sentences.

15

Defendant also complains that his sentences should not be consecutive. He cites La.Code Crim.P. art. 883, which states in pertinent part:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

Although the offenses were obviously similar and were attempted on the same morning, they were committed against two separate victims in two different locations. The district court made this point at sentencing. Thus, the district court did not err by ordering the sentences to run consecutively.

## DECREE

For the foregoing reasons, Defendant's convictions, habitual offender adjudication, and sentences are affirmed.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules – Courts of Appeal, Rule 2-16.3.